BRUCE ALLEN SINGSAAS, A MINOR, BY
THELMER E. SINGSAAS, HIS FATHER AND
NATURAL GUARDIAN, AND ANOTHER v. JEROME
A. DIEDERICH AND ANOTHER, d.b.a. DIEDERICH
BROS. CONSTRUCTION COMPANY, AND ANOTHER.
WESTERN CASUALTY AND
SURETY COMPANY, RESPONDENT.

238 N. W. 2d 878.

January 30, 1976—No. 45636.

*Harold C. Lucking,* for Diederich Bros. Construction Company.

*Severson & Qualley; Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan; Schmidt, Thompson, Lindstrom & Thompson,* and *J. E. Thompson,* for plaintiffs.

*Carroll, Cronan, Roth & Austin, Robert M. Austin,* and *John A. Doyle,* for respondent.

Heard before Otis, Scott, and Amdahl, JJ., and considered and decided by the court en banc.

DOUGLAS K. AMDAHL, JUSTICE.*

Appeal from an order of the District Court of Yellow Medicine County determining that bodily injuries, occurring after cancellation of a general liability insurance policy with completed operations hazard and products hazard endorsements but caused by negligence occurring while the policy was in effect prior to cancellation, were not covered by the policy. Affirmed.

The parties stipulated, for purposes of this declaratory judgment action only and so far as material here, that prior to December 1971, Jerome A. and Daniel Diederich organized a business partnership doing business as Diederich Bros. Construction Company (Diederich). They subsequently purchased a policy of insurance from respondent, Western Casualty & Surety Company. The policy contained both a products hazard endorse-

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

ment and a completed operations hazard endorsement, and its stated term was from November 24, 1971, to November 24, 1974. On or about December 6, 1971, Diederich negligently performed some work in connection with repairs and modification on a manlift located in a grain elevator structure owned and operated by the Burr Farmers Elevator & Supply Company in the village of Burr, Minnesota. The negligent work consisted of using a cast iron socket clamp into which a soft metal, called babbitt, was placed for the purpose of holding the end of the manlift hoisting cable. Diederich decided to go out of business and requested cancellation of the policy. The policy was canceled on July 21, 1972, and some amount of premium was refunded to Diederich. On August 8, 1972, plaintiff Bruce Singsaas, an employee of the Burr Farmers Elevator & Supply Company, used the manlift and the cable came loose from the cast iron socket, causing the manlift to fall, rendering him a permanent paraplegic.

The policy by its terms applied to bodily injuries caused by an "occurrence" and "occurrence" was defined in the policy as:

" '[O]ccurrence' means an accident, including injurious exposure to conditions which results, *during the policy period*, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." (Italics supplied.)

The policy further provided that it applied "only to bodily injury * * * which occurs during the policy period * * *."

The issue is: Does a liability insurance policy containing a completed operations hazard endorsement provide coverage where the policyholder's negligent acts during a time the policy is in effect result in injury after a policy has been canceled and the policy specifically provides that its coverage is limited to accidents which result, during the policy period, in bodily injury and to bodily injury which occurs during the policy period?

We agree with the trial court and answer the question in the negative.

The definition of "occurrence" in the policy is derived from a 1966 revision of a nationally standardized liability policy form.

The underwriting intent of the language is to make coverage depend upon whether bodily injury results during the policy period. Tarpey, *The New Comprehensive Policy: Some of the Changes*, 33 Ins. Counsel J. 223; Gowan, *Completed Operations and Products Liability Insurance Coverage of the New Comprehensive General-Automobile Policy*, A. B. A. Section of Insurance, Negligence and Compensation Law, 1965-1966 Proceedings, pp. 265, 280; R. Keeton, Insurance Law, §§ 2.11(d), 5.10(d). This intent is emphasized by the further explicit provision, noted *supra*, that "[t]his insurance applies only to bodily injury * * * which occurs during the policy period * * *."

The trial court decision is consistent with the generally accepted rule that the time of the occurrence is not the time the wrongful act was committed but the time the complaining party was actually damaged. 1 Long, The Law of Liability Insurance, § 11.02; 43 Am. Jur. 2d, Insurance, § 340; Remmer v. Glens Falls Ind. Co. 140 Cal. App. 2d 84, 295 P. 2d 19, 57 A. L. R. 2d 1379 (1956) (land graded and filled while comprehensive personal liability policy in effect but landslide damaging adjoining property happened after termination of policy); Troy v. London & Lancashire Ind. Co. 129 N. Y. S. 2d 84 (1953) (injuries occurred after termination of policy from products manufactured and sold during policy period); Protex-A-Kar Co. v. Hartford Acc. & Ind. Co. 102 Cal. App. 2d 408, 227 P. 2d 509 (1951) (insurer canceled policy after learning of some claims for damages from antifreeze products and avoided liability for all claims made after the date of cancellation); Landerman v. United States Fidelity & Guaranty Co. 25 Conn. Supp. 297, 203 A. 2d 150 (1964) (product liability policy did not apply when ladder sold during policy period broke after expiration); Scott v. Keever, 212 Kan. 719, 512 P. 2d 346 (1973) (injury from ladder after policy period); National Aviation Underwriters, Inc. v. Idaho Aviation Center, Inc. 93 Idaho 668, 471 P. 2d 55 (1970) (propeller failure after cancellation by insured); Silver Eagle Co. v. National Union Fire Ins. Co. 246 Ore. 398, 423 P. 2d 944, 40 A. L. R. 3d 1432 (1967) (in-

surer canceled policy after learning of two other accidents from defective truck coupling device) ; Oceanonics, Inc. v. Petroleum Distributing Co. 280 So. 2d 874 (La. App. 1973) (defective weld on crane boom during period of completed operations and products liability policy but collapse of boom occurred after expiration) ; Great American Ins. Co. v. Tinley Park Recreation Comm. 124 Ill. App. 2d 19, 259 N. E. 2d 867 (1970) (insurance in effect only on day of fireworks display and injury occurred 2 days later when small boy found unexploded bomb and it exploded).

Appellants urge that it is the accident and not the injury which must occur within the policy period; that an accident may be a gradual process, The Travelers v. Humming Bird Coal Co. 371 S. W. 2d 35, 38 (Ky. 1963) ; and that such a gradual accident is covered by the policy if the process begins within the policy period even if its results occur after policy termination, Kissel v. Aetna Cas. & Surety Co. 380 S. W. 2d 497, 509 (Mo. App. 1964).

The view urged by appellants is the minority view and is based upon the proposition, stated in The Travelers v. Humming Bird Coal Co. 371 S. W. 2d 35, 38, that an accident "need not be a blow but may be a process." The insurer's defense there—that a gradual landslide was not an accident within the meaning of the policy—is similar to the claim of the insurer here—that the wearing away of the soft metal part was not an accident within the meaning of the policy. The property damage from the landslide occurred during the policy period, so the case is not helpful on the issue raised here. Kissel v. Aetna Cas. & Surety Co. *supra*, also involved a landslide, but the property damage occurred after the policy period. Kissel is distinguishable from the case here under consideration because the insurance policy by its terms applied to damages "caused by accident." 380 S. W. 2d 501. There was no explicit requirement that the damages occur within the policy period. Thus, so long as the accident occurred within the policy period, the damages were covered. The Missouri Court of Appeals in Kissel followed the Humming Bird Coal case to

find that an accident may be a process; noted that "initial shift or slide of land occurred during the period the policy in question was in force" (380 S. W. 2d 509) ; and therefore that the accident was covered. A dissenting opinion in Samuelson v. Chutich, 187 Colo. 155, 163, 529 P. 2d 631, 636 (1974), followed Humming Bird Coal and Kissel to argue that "[l]iability attached" when a pipe was negligently installed during the policy period even though the explosion did not occur until 5 years after expiration thereof. The policy by its terms applied "only to accidents which occur during the policy period." 187 Colo. 158, 529 P. 2d 633. The dissenting opinion in Oceanonics, Inc. v. Petroleum Distributing Co. *supra*, did interpret a policy with the same definition of "occurrence" as is here involved, to apply to injuries sustained after the policy expired. However, this result was based in part on the difference between the civil law doctrine of delictual obligations in Louisiana and the common law of tort liability in other jurisdictions. Under the civil law, liability arises at the time the wrongful act occurs. 280 So. 2d 881 (concurring and dissenting opinion). This, then, is the meager support for the minority view advocated here by appellants. In contrast, the support for the majority rule is overwhelming.

The majority rule, which follows the underwriting intent, has been criticized as contrary to the intent of the insured party when purchasing completed operations and products liability coverage to protect himself from liability resulting at any time from a negligent act performed during the policy period. Oceanonics, Inc. v. Petroleum Distributing Co. 280 So. 2d 874, 885 (dissenting opinion). However, such intent is no less frustrated when the policy limit selected by the insured is less than the economic consequences of an injury and no one would argue that the insurance carrier should pay an amount larger than its policy limits. The rule does not preclude an insured from purchasing the insurance coverage he desires. The court in Home Mutual Fire Ins. Co. v. Hosfelt, 233, F. Supp. 368, 370 (D. Conn. 1962), summarized the matter:

"All insurance, whether effective so long as premiums are paid, as in health and life policies, or for a fixed period, as in fire policies, begins and ends at some point of time. While it is arguable that the liability of an insurer should attach at the time of the negligent act, the proper rule seems to be that the liability accrues when the cause of action arises. * * * It might be more desirable for an insured to have protection which indemnifies him against all liability arising from causative forces which come into being while the policy is in force, regardless of when the event which initiates liability occurs, rather than insurance which protects him from liability which accrues only within the term of the policy. This purpose can easily be carried out by a proper wording of the policy; but the wording in the policy under consideration here does not permit such a construction."

It is also argued that the policy language would permit the insurer to avoid liability by canceling the policy before an injury occurred if it learned of any negligent work. Oceanonics, Inc. v. Petroleum Distributing Co. 280 So. 2d 874, 886 (dissenting opinion); Keeton, Insurance Law, § 211(c). However, the possibility of cancellation by the insurer is not an appropriate reason to reject the majority rule here and we do not reach nor answer issues arising by reason of insurer cancellation, as it was the insured who canceled the policy.

Affirmed.