**JOSTENS, INC., Respondent,**

v.

**CNA INSURANCE/CONTINENTAL CASUALTY COMPANY, Petitioner, Appellant.**

**No. C6-86-2.**

Supreme Court of Minnesota.

April 3, 1987.

Bradley M. Jones, J. Richard Bland, William M. Hart, Minneapolis, for appellant.

Mark M. Nolan, St. Paul, for respondent.

AMDAHL, Chief Justice.

We originally issued an opinion in this case on January 16, 1987. *Jostens, Inc. v. CNA Ins./Continental Casualty Company*, 399 N.W.2d 551 (Minn.1987). On petition for rehearing, we withdraw that opinion and substitute this opinion. CNA Insurance/Continental Casualty Company (CNA) appeals from a decision of the Court of Appeals which affirmed the trial court's decision that CNA is liable under the terms of "umbrella excess liability" insurance policies issued to Jostens, Incorporated (Jostens), to indemnify a class action settlement between Jostens and its former and current female employees. The Court of Appeals also affirmed the trial court's denial of CNA's requests for allocation of damages and an adjustment of prejudgment interest. We affirm in part, reverse in part.

Jostens hired Diana Nagy (Nagy) on June 25, 1973. Just over a year later, Nagy resigned due to her inability to obtain pay or promotion commensurate with males in similar positions. In September 1974, she filed an EEOC charge against Jostens as a procedural prerequisite to filing a Title VII civil suit for sex discrimination. *See* 42 U.S.C. § 2000e–5 (1984). The EEOC referred the charge to the Minnesota Human Rights Commission which issued a finding of probable cause that Jostens discriminated against Nagy. On September 26, 1977, Nagy received a right to sue letter. She filed a federal class action suit on December 17, 1977.

Jostens initially tendered coverage to its underlying insurer Federated Mutual Insurance Company, but that insurer denied coverage. Federated's denial of coverage is not in dispute. Jostens then requested coverage from CNA; CNA had issued two policies to Jostens, one covering the period from November 8, 1971, to November 8, 1974, and the other covering the period from November 8, 1974, to January 1, 1978. Coverage B under both policies provided coverage where underlying coverage was unavailable.[1] CNA denied coverage and defense, asserting that Jostens failed to provide notice as required by the policies and that the damages for discrimination fell outside the scope of the policies. On November 6, 1979, the federal court certified a class to proceed in a Title VII suit against Jostens. Jostens filed suit in Ramsey County Court seeking an order requiring CNA to pay defense costs to Jostens' retained counsel. The trial court granted summary judgment to plaintiffs. The trial

---

1. Coverage B provided:

   *The company will indemnify the insured, with respect to any occurrence not covered by underlying insurance, or with respect to damages not covered by underlying insurance but which results from an occurrence covered by underlying insurance, for ultimate net loss in excess of the insured's retained limit which the insured shall become obligated to pay as damages by reason of liability imposed upon the insured by law or assumed by the insured under any contract because of*
     *personal injury,*
     *property damage, or*
     *advertising injury*
   *to which this coverage applies, caused by an occurrence.* The company with respect to an occurrence not covered in whole or in part by underlying insurance or to which there is no other insurance in any way applicable, shall have the right and duty to defend any suit against the insured seeking damages on ac-

   count of such personal injury, property damage or advertising injury, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted. If the company is prevented by law or otherwise from performing the obligation to defend set forth in this coverage, the company will reimburse the insured for defense costs and expenses incurred with the written consent of the company.
   Amounts paid or incurred by the company pursuant to the obligation to defend set forth in this coverage are not subject to the amount stated in item 4 in the declarations and are in addition to the limits of the company's liability. [Emphasis in original.]

court ruled that CNA had a duty to defend; that Jostens could retain its own counsel; and that CNA had to reimburse Jostens for defense costs. Although we summarily affirmed the trial court order, we cautioned that the "affirmance does not preclude the consideration of any issues not decided by [the trial court's] Order of July 31, 1980, on any subsequent appeal."

The trial court's order did not determine the amount of attorney fees recoverable, and Jostens again filed suit, this time seeking reimbursement from CNA for $286,704 in attorney fees. The trial court ordered CNA to pay the fees plus prejudgment interest from the date Jostens tendered payment to its counsel. CNA appealed. We affirmed the trial court's holding that CNA was liable for all defense costs incurred by Jostens, rejecting CNA's argument that it was entitled to apportionment of defense costs. We reversed the trial court on the issue of interest calculation, holding that interest did not accrue until Jostens informed CNA as to the amount owed. *Jostens, Inc. v. CNA Ins., Continental Casualty Co.*, 336 N.W.2d 544 (Minn.1983).

Jostens reached a $2.2 million settlement with class members to the federal lawsuit in February 1984. The federal district court approved the settlement which, with interest, totaled $2,372,039.40. On September 28, 1984, Jostens sent CNA a copy of the federal court's approval of the settlements and a letter indicating the settlement amount. Jostens paid the settlement in two payments, one on November 26, 1984, and the balance a week later. On April 5, 1985, Jostens sent notice to CNA that payment had been tendered, and provided CNA with a worksheet explaining the settlement formula.

Jostens filed suit to recover the settlement from CNA. CNA denied liability, alleging once again that Jostens had provided prejudicially late notice. Alternatively, CNA argued that damages should be allocated so that CNA would be responsible only for damages arising during the coverage period.

The trial court ruled that the late notice issue had been decided by the first trial court's order requiring CNA to provide defense to Jostens.[2] The trial court also found that because the federal district court ruled the settlement reasonable, CNA could not request allocation. The court reasoned that the class action settlement may have involved a distribution scheme resulting in payments to some claimants not entitled, as a matter of law, to recover as individuals but that "where the dollar amount of the settlement is reasonable, what the plaintiffs do with the money afterwards is irrelevant." The court ordered payment with interest accruing from November 30, 1984.

The Court of Appeals did not address the issue of whether the notice issue was already determined by the first trial court's order. Instead, the Court of Appeals held notice to be timely under the policies. *Jostens, Inc. v. CNA Ins./Continental Casualty Co.*, 386 N.W.2d 257, 260 (Minn.App. 1986). The Court of Appeals affirmed the trial court's decision not to allocate costs and to award interest from November 30, 1984. *Id.* at 260–61. CNA appeals from the decision.

### I.

The first issue raised by CNA is whether Jostens is barred from recovering under the policies because it prejudiced CNA's rights by providing late notice of the claim against Jostens. The Court of Appeals held that notice was timely under the policies. Although the Court of Appeals did not decide the issue, the court should have initially determined whether the notice issue was previously decided by the first trial court's order requiring CNA to defend, and our court's affirmance of that order. An analysis by the Court of Appeals of whether notice was proper is appropriate only if the issue had not already been determined.

---

**2.** The trial court below found that the first trial court's order "necessarily determines that Jostens gave proper notice to CNA. If not, he could not have found that CNA had a duty to defend. If notice was proper as to the duty to defend, it was proper as to coverage."

The first trial court's order does not expressly state that notice to CNA was proper; however, Jostens argues that that conclusion is implicit in the determination that CNA had a duty to defend. Stated differently, Jostens argues that the trial court could not have found a duty to defend unless it first determined that Jostens fulfilled the notice requirements under the policy. CNA argues that the trial court did not have to determine that notice was proper and only determined that notice was *arguably* proper in order to find that CNA had a duty to defend Jostens. CNA cites as support our decision in *Brown v. State Automobile & Casualty Underwriters,* 293 N.W.2d 822 (Minn.1980), which held that the duty to defend is broader in scope than the duty to indemnify.

■ We are in agreement with the decision of the trial court below that the first trial court necessarily determined the notice issue. Notice is an affirmative defense of the insurer to both the duty to defend and the duty to indemnify. Notice requirements are intended to provide the insurer with an opportunity for prompt investigation so as to protect itself against invalid and fraudulent claims and determine a disposition by settlement or defense. *See Sterling State Bank v. Virginia Surety Co.,* 285 Minn. 348, 354, 173 N.W.2d 342, 346 (1969); 8 J. Appleman, Insurance Law and Practice, § 4731 (1981). In determining whether an insured has satisfied an immediate notice clause in the policy, the requirement should be construed liberally against the insured and strictly against the insurer, *Sterling State Bank,* 285 Minn. at 353–54, 173 N.W.2d at 346, and immediate notice need only be reasonably prompt under all the circumstances, *Sleeter v. Progressive Assurance Co.,* 191 Minn. 108, 110, 253 N.W. 531, 533 (1934). Applying this standard, a trial court must determine if an insured has met all notice requirements as a condition precedent to determining whether there exists a duty to defend

or indemnify. In the present case, the first trial court, in finding a duty to defend, also necessarily determined that the notice provision was satisfied. We affirmed that decision.[3]

■ It is clear that CNA was also aware that the trial court had ruled on the notice issue. In an earlier brief to this court, CNA listed as one of its arguments that: "The Lower Court Erred In Ruling as a Matter of Law that a Four-Year Delay in Notifying an Insurer of an Existing Claim was not Prejudicial." CNA thereby acknowledged that the trial court had decided the issue, and proceeded to argue the issue before this court. Having previously determined whether notice was properly given to CNA, we decline to reexamine the issue. Accordingly, we hold that our Order affirming the first trial court's determination that notice was proper and that CNA had a duty to defend precludes challenge on this appeal that notice was not proper.

## II.

Having determined that Jostens is entitled to recover from CNA, we must next determine whether settlement costs should be allocated. The Court of Appeals held that CNA was barred from requesting allocation of settlement payments and defense costs, reasoning that to allow CNA to present this issue would allow CNA to collaterally attack the federal court's determination that the settlement amount was reasonable.

■ The Court of Appeals decision confuses the issue of reasonableness of settlement with the issue of how much of the settlement CNA is liable for under the policies. CNA is not challenging the amount of settlement but, rather, which amounts are covered under the policies. The issue of how much of the settlement is covered is distinct from the issue of whether a settlement is reasonable, the issue we addressed in *Miller v. Shugart,* 316 N.W.2d 729, 734

---

3. CNA points out that our Order affirming the first trial court specifically stated that the "affirmance does not preclude the consideration of any issues not decided by [the trial court] on any subsequent appeal." This statement was

not in reference to the notice issue, which was decided by the trial court, but was instead directed to the issues of scope of coverage and duty to indemnify.

(Minn.1982). We must therefore determine what injuries arose under the policies and are thus indemnified.

Coverage B under the policies indemnifies Jostens "with respect to any occurrence not covered by underlying insurance * * * for ultimate net loss * * * because of personal injury, property damage, or advertising injury to which this coverage applies, caused by an occurrence." An "occurrence" for purposes of discrimination is "an act or series of acts * * * committed during this policy period which causes such personal injury." Finally, the policies also define "Policy Period:" "This coverage applies to personal injury, * * * taking place during this policy period."

The provision defining the coverage period in the present case is similar to the provision we interpreted in *Singsaas v. Diederich*, 307 Minn. 153, 238 N.W.2d 878 (1976). In *Singsaas*, insured negligently performed some work on a grain elevator during the policy period which resulted in injuries after insured cancelled the policy. The policy defined "occurrence" as "an accident, including injurious exposure to conditions which results, during the policy period, in bodily injury or property damage * * *." The policy also stated that it applied "only to bodily injury * * * which occurs during the policy period * * *." *Id.* 307 Minn. at 155, 238 N.W.2d at 880. We phrased the issue: "Does a liability insurance policy * * * provide coverage where the policyholder's negligent acts during a time the policy is in effect result in injury after a policy has been canceled and the policy specifically provides that its coverage is limited to accidents which result * * in bodily injury * * * which occurs during the policy period?" *Id.* 307 Minn. at 155, 238 N.W.2d at 880. We held that the injuries were not covered under the policy, and stated that the "decision is consistent with the generally accepted rule that the time of the occurrence is not the time the wrongful act was committed but the time the complaining party was actually damaged." *Id.* 307 Minn. 156, 238 N.W.2d at 880.

Under the settlement formula determining the class settlement distribution, damages are measured by the time period when each class member was employed. The formula thus assumes that injuries to each class member correspond to the period in which she worked for Jostens. *Singsaas* compels the conclusion that damages awarded for work experience accrued outside of the policy period are not covered by the policy but are instead damages for which Jostens is solely responsible. We do not think that the parties bargained for or intended to create a policy which would cover Jostens prior to the initiation of the policy; we also do not think that the parties intended to create a policy which would, for an infinite period of time, cover Jostens for any future damages due to the discrimination in question. We find the following allocations of damages appropriate:

### A. $89,855.04

This figure represents the amount awarded to class members who worked only after the policies expired. These injuries occurred outside the policy period and are not covered by CNA.

### B. $206,709.27

This amount represents funds paid to class members who worked during and after the policy period, for work performed after the policy period. Funds distributed to them for post-policy injury is also the sole responsibility of Jostens.

### C. $56,894.17

Jostens paid this amount to class members for discrimination occurring prior to the start of the policy in November 1971. These injuries are outside the policy period and are thus also the sole responsibility of Jostens.

### D. $242,000

This figure represents two different settlement amounts. One hundred thousand ($100,000) of this amount is for a scholarship fund for class members and their children, set up as part of the settlement. One hundred forty-two thousand ($142,000) is for work performed during the policy peri-

od but which was earlier than 2 years prior to Nagy's EEOC charge. CNA argues that because the policy indemnifies Jostens only for liability imposed by law, the $100,000 and $142,000 settlement amounts are not covered by the policy. CNA asserts that Jostens had no legal duty to give a scholarship award or give backpay beyond 2 years prior to Nagy filing the EEOC charge.

CNA's arguments are not persuasive. Whether Jostens would have been legally liable for $242,000 for scholarships and backpay if it had gone to trial is irrelevant; Jostens settled the case and its agreement with the plaintiffs imposed a legal obligation to pay the amount. *Cf. Western Casualty and Surety Co. v. Polar Panel Co.*, 457 F.2d 957, 960 (8th Cir. 1972) (insurer has no cause for complaint about settlement amount being gratuitous where insured made provident settlement). The remaining question is whether $242,-000 is to redress injuries suffered during the policy period.

The $142,000 for backpay is clearly for injuries occurring during the policy. We also find that the $100,000 for scholarships is to redress injuries inflicted during the policy period. It appears that CNA should be responsible for these damages.

### E. Class Plaintiffs Attorney Fees

CNA argues, without any support, that because the class and its counsel received nearly identical amounts for settlement, any uncovered settlement amounts paid to the class must be matched by uncovered attorney fees. The argument assumes that recovered attorney fees are matched and calculated dollar for dollar with the damage amount to the class plaintiffs. Unlike the damage awards to the class, however, the attorney fees were not calculated by precise formula to fall within or outside the policy period. We find that Jostens may recover class plaintiffs attorney fees from CNA.

### F. Defense Costs

CNA argues that the court should allocate defense costs. CNA argues that defense costs should be apportioned either by

(1) the percentage of insured and uninsured settlement amounts as calculated above, or (2) the fraction of uninsured years over the total period of alleged injury. CNA's argument is virtually identical to the issue addressed in *Transport Insurance Company v. Lee Way Motor Freight, Incorporated*, 487 F.Supp. 1325 (N.D.Tex.1980). In that case the court rejected the request for allocation of defense costs, finding persuasive insured's argument that most of its defense costs were incurred in defense of the suit and could not be allocated among separate claimants or time periods. *Id.* at 1332.

In the present case, allocation of defense costs based on a percentage of the uncovered settlement amounts or time periods is not merited. It appears likely that a great deal of the defense costs were incurred in general defense preparation and cannot be separated by claimants or time periods. Requiring CNA to be responsible for defense costs is also consistent with the strong policy in favor of requiring defense where there is even arguable coverage. CNA cites to *Jostens, Inc. v. Mission Insurance Company*, 387 N.W.2d 161 (Minn. 1986) for the proposition that defense costs must be allocated. That case is inapplicable, however. There, we examined the issue of allocating defense costs between two insurers. The present case involves an insured party and an insurer which originally breached its duty to defend. We therefore hold that CNA is responsible for all costs for defense.

### G. Retained Limit

The policies issued to Jostens by CNA provided for retained limits which must be deducted from the amount of indemnity. For the policy covering the period from November 8, 1971, to November 8, 1974 (1,096 days), the retained limit was $25,000. For the policy covering the period from November 8, 1974, to January 1, 1978 (1,150 days), the retained limit was $10,-000. The policies covered a total of 2,246 days. The average retained limit during the entire period of the policy is [ (1,096 × $25,000) + (1,150 × $10,000) ]/2,246 = $17,319.68. We shall deduct this figure from Jostens' amount of recovery.

In summary, we find that Jostens is solely responsible for pre- and post-policy damages amounting to $370,778.16. CNA must indemnify Jostens for the remaining amount of the class action settlement.

### III.

The remaining issue we must address is whether the Court of Appeals properly calculated prejudgment interest from November 30, 1984, the approximate date Jostens paid the class settlement. CNA argues that interest should have been calculated from April 5, 1985, because that was the first date Jostens supplied CNA with information to calculate the amount of covered and uncovered settlement payments. In the previous appeal by these parties before this court, we found it "fair only to permit interest once the bills for attorney fees are made available to CNA, and thus are 'readily ascertainable.'" *Jostens, Inc. v. CNA Ins., Continental Casualty Co.*, 336 N.W.2d 544, 546 (Minn.1983) (citing *Polaris Indus. v. Plastics, Inc.*, 299 N.W.2d 414 (Minn.1980)).

Following our decision in that case, the legislature amended Minn.Stat. § 549.09 (1984) to provide that:

> The prevailing party shall receive interest on any judgment from the time the action was commenced or as to special damages *from the time when special damages were incurred*, if later than commencement of the action, until the time of verdict or report only if the amount of its offer is closer to the judgment than the amount of the opposing party's offer. (Emphasis added.)

Section 549.09, subd. 1 (1984). Thus, the statute mandates that interest on the judgment be calculated from the time when damages were paid. We therefore affirm the Court of Appeals determination of prejudgment interest.

Affirmed in part, reversed in part.

COYNE, J., took no part in the consideration or decision of this case.