**JENOFF, INC., Respondent,**

v.

**NEW HAMPSHIRE INSURANCE COMPANY, petitioner, Appellant.**

**No. C3–95–2409.**

Supreme Court of Minnesota.

Jan. 30, 1997.

Law Offices of Patrick D. Reilly, Michael R. Peterson, Patrick D. Reilly, Minneapolis, for appellant.

Fredrickson & Byron, P.A., Jay M. Quam, Laura J. Miller, Richard D. Snyder, Minneapolis, for respondent.

OPINION

STRINGER, Justice.

In this matter, we are asked to determine whether an insurance policy covering liability

resulting from an "occurrence" provides coverage where an allegedly negligent act occurs during the period of policy coverage, but the negligence does not result in damages until after the policy has expired. Respondent Jenoff, Inc. ("Jenoff") purchased an "Umbrella Liability Policy" ("Liability Policy") from appellant New Hampshire Insurance Company ("New Hampshire") providing coverage for the period from January 1, 1976, to January 1, 1977. Jenoff seeks coverage under the policy for liability resulting from a 1993 fire allegedly caused by Jenoff's negligent installation of a heat detection and fire suppression system during the 1976 policy period. The district court granted New Hampshire's motion for summary judgment on the basis that the damages caused by the act must occur during the policy period. On appeal, the court of appeals reversed, holding that, where an "occurrence" policy does not specifically require that damages occur within the policy period, the policy covers liability for damages occurring after the policy period if the damages are caused by an occurrence during the policy period. Because we conclude that Minnesota follows the general rule that an "occurrence" within the meaning of an occurrence policy is not the time when the wrongful act was committed but the time when the complaining party was actually injured, and the policy here clearly states that it applies only to occurrences taking place during the policy period, we reverse.

Jenoff is a corporation located in Fergus Falls, Minnesota, specializing in the installation of heat detection and fire suppression systems in grain elevators. Jenoff purchased two separate liability insurance policies from New Hampshire in 1976. The first policy was a "Property Owners Policy" which provided Jenoff with $500,000 liability coverage for bodily injuries and $120,000 coverage for property damage liability. The second policy, purchased at the same time as the Property Owners Policy, was the disputed Liability Policy. Both policies provided coverage for the period from January 1, 1976, to January 1, 1977.

The Liability Policy provided up to $2,000,000 coverage for "any one occurrence Personal Injury or Property Damage or Advertising Liability or any combination thereof." The policy defined "occurrence" as "an event, including continuous or repeated exposure to conditions, which result in Personal Injury or Property Damage neither expected nor intended from the standpoint of the insured." "Property damage" was defined as "direct or consequential damage to or destruction of tangible property, including loss of use thereof," and the section of the Liability Policy titled "Territory–Policy Period" stated that "[t]his policy applies only to occurrences happening anywhere during the policy period."

In 1976, while the New Hampshire policies were in effect, Jenoff installed a heat detection and fire suppression system in a grain elevator in Webster, South Dakota. The elevator was destroyed by fire in 1993 and the elevator's fire insurer, National Union Fire Insurance Company, brought a $2.5 million subrogation claim against Jenoff, alleging that the property damage to the grain elevator was a direct result of Jenoff's negligent design, manufacture, and installation of the heat detection and fire suppression system. Since no modifications or alterations were made to the system after its installation, Jenoff's alleged liability arises entirely from its actions in 1976.

Jenoff's tender of the defense of the National Union lawsuit to New Hampshire based on the Liability Policy[1] was rejected by New Hampshire, on the ground that the lawsuit did not arise from an "occurrence" within the period of coverage under the policies. Jenoff then brought this action for declaratory judgment, seeking a declaration of coverage for the National Union claim under the New Hampshire Liability Policy. The district court granted New Hampshire's motion for summary judgment, holding that *Singsaas v. Diederich*, 307 Minn. 153, 238 N.W.2d 878 (1976), established a general rule that, under an "occurrence policy," the time of the occurrence is not the time that the act resulting in liability is committed, but rather

---

1. Jenoff did not seek coverage under the Property Owners Policy because it conceded that the Property Owners Policy limits coverage to accidents where the damages occur during the policy period.

the time that the complaining party is actually damaged. The court of appeals reversed, holding that where an occurrence policy does not specifically require that damage occur within the policy period, the policy covers liability for damage occurring after the policy period when the wrongful act causing the damage was committed during the policy period.

Insurance coverage issues and the interpretation of insurance contract language are questions of law, reviewed *de novo*. *State Farm Ins. Cos. v. Seefeld*, 481 N.W.2d 62, 64 (Minn.1992). *See also Meister v. Western Nat'l Mut. Ins. Co.*, 479 N.W.2d 372, 376 (Minn.1992). In interpreting insurance contracts, we must ascertain and give effect to the intentions of the parties as reflected in the terms of the insuring contract. *Minnesota Mining & Mfg. Co. v. Travelers Indem. Co.*, 457 N.W.2d 175, 179 (Minn.1990) (citing *Dairyland Ins. Co. v. Implement Dealers Ins. Co.*, 294 Minn. 236, 244–45, 199 N.W.2d 806, 811 (1972)). "If the terms of an insurance policy are not specifically defined, they must be given their plain, ordinary, or popular meaning." *Smith v. St. Paul Fire & Marine Ins. Co.*, 353 N.W.2d 130, 132 (Minn. 1984) (citing *Dairyland Ins.*, 294 Minn. at 244, 199 N.W.2d at 811). Ambiguous terms in an insurance contract are to be resolved against the insurer and in accordance with the reasonable expectations of the insured. *Columbia Heights Motors, Inc. v. Allstate Ins. Co.*, 275 N.W.2d 32, 36 (Minn.1979) (citations omitted). Ambiguity exists if the language of the policy is reasonably subject to more than one interpretation. *Id.* at 34. "However, a court has no right to read an ambiguity into the plain language of a policy in order to provide coverage." *Farkas v. Hartford Accident & Indem. Co.*, 285 Minn. 324, 327, 173 N.W.2d 21, 24 (1969) (citations omitted).

Both parties agree that the Liability Policy at issue in this case is an "occurrence policy"—that is, a policy providing coverage for liability incurred due to occurrences during the policy period rather than simply claims made during the policy period. It is further undisputed that in order to be covered under such a policy, the "occurrence" must happen during the policy period. The issue then, is whether an "occurrence" is when the complaining party suffers damage or, whether it is when the act is performed ultimately resulting in liability, even if the damage caused by the act is not suffered until after the policy has expired.

In *Singsaas v. Diederich*, 307 Minn. 153, 238 N.W.2d 878 (1976), we held that an occurrence policy did not provide coverage where the insured construction company had negligently performed repairs and modifications to a grain elevator manlift during the period of coverage, but the negligence did not result in an accident until after the policy had expired. While we noted that the occurrence policy at issue explicitly defined "occurrence" as "an accident, including injurious exposure to conditions which results, *during the policy period*, in bodily injury or property damage neither expected nor intended from the standpoint of the insured," we stated that our holding was "consistent with the generally accepted rule that the time of the occurrence is not the time the wrongful act was committed but the time the complaining party was actually damaged." *Id.* at 880 (emphasis in original). We further stated that to hold otherwise would frustrate the underwriting intent of the insurer by forcing the insurer to pay an amount larger than its policy limit because:

> All insurance, whether effective so long as premiums are paid, as in health and life policies, begins and ends at some point of time. While it is arguable that the liability of an insurer should attach at the time of the negligent act, the proper rule seems to be that the liability accrues when the cause of action arises.

*Id.* at 882 (quoting *Home Mutual Fire Ins. Co. v. Hosfelt*, 233 F.Supp. 368, 370 (D.Conn. 1962)).

More recently, in *Northern States Power Co. v. Fidelity & Cas. Co. of New York*, 523 N.W.2d 657 (Minn.1994), we cited *Singsaas* for the proposition that Minnesota has adopted an "actual injury" or "injury-in-fact" theory in determining which insurance policies have been triggered by an occurrence. Under such a rule, "only those policies in effect when damage occurred are triggered."

*Id.* at 662. Accordingly, we held that, where environmental damage had occurred continuously over the policy periods of several different insurance policies, "each insurer is held liable for only those damages which occurred during its policy period; no insurer is held liable for damages outside its policy period." *Id.* *Singsaas* and *Northern States Power* thus make it clear that, in Minnesota, an "occurrence," within the meaning of an indemnity policy, is not the time when the wrongful act was committed, but rather, it is the time when the complaining party was actually damaged. This general rule is in accord with the law of the vast majority of states that have considered the question.[2]

The Liability Policy purchased by Jenoff contains a section in the relatively abbreviated "Insuring Agreements" entitled "Territory—Policy Period." This provision explicitly states: "This policy applies only to occurrences *happening anywhere during the policy period.*" (emphasis added). The policy defines "occurrence" as "an event, including continuous or repeated exposure to conditions which result in Personal Injury or Property Damage neither expected nor intended from the standpoint of the insured." Thus, the policy, while not *defining* an "oc-

currence" as an event taking place in the policy period as does the Property Owners Policy, clearly states that it *applies* only to occurrences taking place during the policy period. We therefore conclude that the district court was correct in its order granting New Hampshire's motion for summary judgment.

Reversed.

---

**2.** *See, e.g., Kirkham, Michael & Assoc., Inc. v. Travelers Indem. Co.,* 493 F.2d 475, 476 (8th Cir.1974) (applying South Dakota law, holding no coverage for accident occurring after policy period but caused by negligent design and supervision of water treatment plant during policy because "[i]t is the damage incurred by 'accident' that triggers the policies' coverage, not the preceding wrongful acts.") (citation omitted); *United States Fidelity & Guar. Co. v. Warwick Dev. Co., Inc.,* 446 So.2d 1021, 1024 (Ala.1984) (finding that "as a general rule the time of an 'occurrence' of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time the complaining party was actually damaged.") (citation omitted); *Tiedemann v. Nationwide Mut. Fire Ins. Co.,* 164 Conn. 439, 324 A.2d 263, 266 (1973) (stating that "accident" unambiguously means " 'the event causing injury, not the cause of that event,' " holding no coverage for damages resulting from fire occurring after the policy period but caused by negligent construction of chimney during the policy period) (citation omitted); *Wrecking Corp.of Am., Virginia, Inc. v. Insurance Co. of N. Am.,* 574 A.2d 1348, 1349–50 (D.C. 1990) (holding *no coverage for collapse of wall after policy period caused by negligent demolition work during policy period because "the pre-

vailing rule is that 'property damage occurs' at the time the damage is discovered or when it has manifested itself."); *Travelers Ins. Co. v. C.J. Gayfer's & Co., Inc.,* 366 So.2d 1199, 1201 (Fla.Dist. Ct.App.1979) (applying general rule, holding no coverage for rain damages suffered after policy had expired but caused by negligent installation of drainage system during policy period); *Millers Mut. Fire Ins. Co. v. Ed Bailey, Inc.,* 103 Idaho 377, 647 P.2d 1249, 1251–52 (1982) (applying general rule, holding no coverage for fire occurring after policy period but caused by negligent installation of insulation during policy period); *Employers Mut. Liab. Ins. Co. v. Michigan Mut. Auto Ins. Co.,* 101 Mich.App. 697, 300 N.W.2d 682, 685 (1980) (adopting general rule, holding no coverage for explosion of boat after policy period caused by negligent installation of gas line during policy period); *Yarrington v. Camarota,* 138 N.J.Super. 398, 351 A.2d 353, 355 (App.Div. 1971) (applying general rule, holding no coverage for fire damage occurring after policy period but caused by negligent construction during policy period); *Dorchester Dev. Corp., v. Safeco Ins. Co.,* 737 S.W.2d 380, 383 (Tex.App.1987) (applying general rule, holding no coverage for faulty construction where damage did not manifest itself until after the policy period).