DONNELLY BROTHERS CONSTRUC-
TION COMPANY, INC., Appellant,

v.

STATE AUTO PROPERTY AND CASU-
ALTY INSURANCE COMPANY, De-
fendant and Third Party Plaintiff, Re-
spondent,

v.

Western National Insurance Company,
Third Party Defendant.

No. A08–0457.

Court of Appeals of Minnesota.

Jan. 26, 2009.

Timothy W. Waldeck, Waldeck & Lind, Minneapolis, MN, for appellant.

Frank J. Rajkowski, Rajkowski Hansmeier Ltd., St. Cloud, MN, for respondent.

Considered and decided by SCHELLHAS, Presiding Judge; MINGE, Judge; and JOHNSON, Judge.

## OPINION

MINGE, Judge.

Appellant contractor initiated this declaratory judgment action against respondent, its insurer, to determine whether respondent had a duty to defend appellant for water-intrusion-damage claims arising out of stucco work in home construction. Appellant challenges summary judgment in favor of respondent, arguing that the district court: (1) erred in ruling that the record clearly established that the triggering event for the damage claims occurred prior to the policy period and that therefore respondent has no duty to defend; (2) improperly relied on the expert opinions presented by the respondent to the exclusion of appellant's expert; (3) erred in relying on an unpublished decision as precedential; (4) erred in failing to determine whether respondent's expert satisfied the *Frye–Mack* standard; (5) improperly denied appellant's attempt to include five additional claims against appellant; and (6) failed to require respondent to follow a consistent internal procedure in determining whether to defend. We reverse and remand.

## FACTS

Appellant Donnelly Brothers Construction Company is engaged in the stucco business. Appellant either directly contracts with property owners or subcontracts with a general contractor to perform residential stucco work. Some of the homes on which appellant worked suffered damage due to water intrusion. During 2005 and 2006, a homeowner sued appellant directly in one case, and homebuilders joined appellant as a third-party defendant in other cases. The stucco work on these homes was performed at various times between 1994 and 2003. In each of the lawsuits, it is alleged that appellant's improper application of stucco was one of several construction and material defects that resulted in damaging water intrusion.

Five different insurers have provided appellant with occurrence-liability-insurance coverage since 1994. Appellant tendered the defense of the litigation to them. Respondent State Auto Property and Casualty Insurance Company was one of those insurers. Its policy included a duty to defend and indemnify for property damage that occurred during the policy period. Respondent's policy period commenced on July 16, 2004, and it denied coverage, claiming that the water intrusion in all of the homes had first occurred prior to its policy period. The policy periods of the other four insurers preceded respondent's, and they agreed to share in appellant's defense.

On August 25, 2006, appellant commenced this declaratory-judgment action seeking a determination that respondent has a duty to participate in the defense of appellant in four pending water-intrusion-damage lawsuits. At the hearing on the parties' cross-motions for summary judgment, respondent agreed to include two additional actions in this litigation because both cases were also pending, and its inspections of those properties had been completed. With these added matters, coverage for six claims was before the district court for summary judgment. In all six cases, the parties agreed that water-intrusion damage has been continual and

ongoing, but disputed when the actual injury attributable to appellant occurred.

At the time of the summary judgment hearing, appellant identified five additional cases in which it was being sued for water-intrusion damages arising out of the construction of other homes. In each of these five cases, appellant claimed respondent had the same duty to defend. Appellant attempted to include those five cases, but respondent objected.

The district court ordered summary judgment in favor of respondent as to the six cases and did not add the five additional cases. Although appellant sought review of that decision, this court dismissed the appeal as premature because there was still a pending claim against a third-party defendant. On remand, the district court dismissed the third-party defendant, ordered final summary judgment for respondent, and judgment was entered. This appeal follows.

## ISSUES

I. Did the district court err when it granted summary judgment in favor of respondent?

II. Did the district court err by not including the five additional cases?

III. Is respondent insurer required to handle respondent's claim pursuant to a uniform company-wide policy?

## ANALYSIS

### I.

The first issue is whether the district court erred in granting summary judgment to respondent with respect to the duty to defend. Appellant asserts that the district court improperly (1) ruled no occurrence triggering the duty to defend took place during the policy period; (2) relied on the opinion of respondent's ex-pert rather than appellant's expert testimony; (3) relied on an unpublished decision of this court as precedential; and (4) failed to determine whether respondent's expert satisfied the *Frye–Mack* standard for admissibility.

On appeal from summary judgment, this court must determine whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). The evidence is viewed in the light most favorable to the party against whom judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). But the party resisting summary judgment may not rest on mere averments; it must produce evidence of specific facts sufficient to raise a jury issue. Minn. R. Civ. P. 56.05; *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn.1997); *Lundgren v. Eustermann*, 370 N.W.2d 877, 881 (Minn.1985). Summary judgment is appropriate if the non-moving party fails to present "sufficient evidence to permit reasonable persons to draw different conclusions." *Schroeder v. St. Louis County*, 708 N.W.2d 497, 507 (Minn.2006). If there are no genuine issues of material fact, we review de novo the district court's application of the law. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989).

### A. Duty to Defend

█ Appellant asserts that because water-intrusion damage to each of the homes occurred within respondent's policy period, the district court erred in concluding that respondent does not have a duty to defend. An insurer's duty to defend arises when the insurance policy "arguably" provides coverage for claims made against the insured. *Franklin v. W. Nat'l Mut. Ins. Co.*, 574 N.W.2d 405, 406–07 (Minn.1998). Insurance-coverage issues

are questions of law, which we review de novo. *State Farm Ins. Cos. v. Seefeld,* 481 N.W.2d 62, 64 (Minn.1992).

### 1. The Insurance Policy

 To determine whether respondent's duty to defend has been triggered, we first look to the language of the insurance policy. General principles of contract interpretation apply to insurance policies. *Lobeck v. State Farm Mut. Auto. Ins. Co.,* 582 N.W.2d 246, 249 (Minn.1998). Unambiguous language must be given its plain and ordinary meaning, and ambiguities in a policy are construed in favor of the insured. *Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.,* 383 N.W.2d 645, 652 (Minn.1986). Policy provisions must be interpreted according to "what the insured would have reasonably understood them to mean." *Erickson v. Christie,* 622 N.W.2d 138, 140 (Minn.App. 2001).

Here, the relevant policy language states:

1. Insuring Agreement
 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

 . . . .

 b. This insurance applies to "bodily injury" and "property damage" only if:
 (1) The "bodily injury" or "property damage" is caused by an occurrence that takes place in the "coverage territory";
 (2) The "bodily injury" or property damage occurs during the policy period. . . .

An occurrence is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy's definition of the phrase "property damage" is "[P]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it." There is no contention that the policy language is ambiguous or that property damage took place outside the coverage territory. Therefore, the issue before this court is whether the property damage occurred while the policy was in force:

### 2. The Caselaw

 This court must determine whether an injury has arguably occurred during the policy period so as to trigger the insurer's duty to defend. But establishing that damage occurred during the policy period is only the beginning of the analysis because, as respondent correctly points out, an insurer may overcome a presumption of coverage and avoid the duty to defend by meeting the "burden of showing that all parts of the cause of action fall clearly outside the scope of coverage." *Jostens, Inc. v. Mission Ins. Co.,* 387 N.W.2d 161, 165–66 (Minn.1986).

In *Westfield Ins. Co. v. Kroiss,* this court stated that whether property damage actually occurred during a policy period is a question of fact to be determined at trial. 694 N.W.2d 102, 106–07 (Minn.App. 2005), *review denied* (Minn. June 28, 2005). In *Kroiss,* we held that an insurer owed its insured builders a duty to defend against defective-construction complaints even

though the complaints did not specifically allege or provide any evidence that damage occurred during the policy period. *Id.* at 106.

Minnesota applies an "actual-injury" rule to determine whether insurance coverage has been triggered by an occurrence. *Jenoff, Inc. v. N.H. Ins. Co.,* 558 N.W.2d 260, 262 (Minn.1997). To trigger a policy, "the *insured* must show that some damage occurred during the policy period." *Northern States Power Co. v. Fid. & Cas. Co. of N.Y.,* 523 N.W.2d 657, 663 (Minn.1994) (emphasis added). In this state, the actual-injury rule has evolved since it was first articulated in *Singsaas v. Diederich,* 307 Minn. 153, 156, 238 N.W.2d 878, 880 (1976). *Singsaas* held that the occurrence is not when the negligent work was done but when the complaining party was actually damaged. *Id.* This court refined the actual-injury rule in situations where there is more than one occurrence of injury because "property damage result[ed] from continuous or repeated conditions of exposure," where there are different insurance policies in effect at the different times the damage occurs, or where there is more than one party that possibly caused the damage. *See Indus. Steel Container v. Fireman's Fund Ins. Co.,* 399 N.W.2d 156, 159 (Minn.App.1987) (holding that there can be more than one occurrence and that more than one policy can be on the risk), *review denied* (Minn. Mar. 18, 1987).

In *Northern States Power Co.,* the Minnesota Supreme Court formally adopted the actual-injury rule, giving it greater breadth by applying an allocation scheme to apportion damages among insurers based on their time on the risk. 523 N.W.2d at 664 (finding that actual injury was "continuous from the point of the first damage to the point of discovery or cleanup" and all insurers were liable for

the time that they were on the risk). In *In re Silicone Implant Ins. Coverage Litigation,* the court reined in the expansive view of the actual-injury rule by limiting allocation among insurers with different periods of coverage to cases in which the injury's origin could not be readily identified and held that liability should not be allocated when an injury, although continuous, resulted from a "readily identifiable discrete event." 667 N.W.2d 405, 422 (Minn.2003) (hereinafter *Silicone* ).

Various decisions of Minnesota courts illustrate the difficult and complex task of determining insurer liability for damage arising from repeated incidents generally and particularly for damage to buildings resulting from moisture and water intrusion caused by contractors. *See Wooddale Builders, Inc. v. Maryland Cas. Co.,* 722 N.W.2d 283, 292 (Minn.2006) (holding insurer is on the risk with respect to a particular home if there is property damage to that home during policy period as result of covered occurrence); *Kroiss,* 694 N.W.2d at 102 (holding that when property damage actually occurs during a policy period is a question of fact to be determined at trial); *cf. Parr v. Gonzalez,* 669 N.W.2d 401, 406 (Minn.App.2003) (examining caselaw regarding when an event triggers an occurrence-liability policy). Similarly, courts have struggled with insurer liability in situations involving environmental damage. *See Domtar Inc., v. Niagara Fire Ins. Co.,* 563 N.W.2d 724, 733–34 (Minn.1997) (holding that it is only in those difficult cases in which property damage is both continuous and so intermingled as to be practically indivisible that *Northern States Power* properly applies); *SCSC Corp. v. Allied Mut. Ins. Co.,* 536 N.W.2d 305, 314 (Minn.1995) (holding that allocation is improper where the jury found the occurrence was a single 1977 chemical spill); *Northern States Power Co.,* 523

N.W.2d at 664 (finding that actual injury was "continuous from the point of the first damage to the point of discovery or clean-up"); *Indus. Steel Container*, 399 N.W.2d at 156 (holding that there can be more than one occurrence where property damage results from continuous, long exposure to a toxic substance and that more than one policy can be on the risk). Because only the issue of respondent's duty to defend is raised on this appeal, because the record has only been developed for summary judgment on that issue, and because the parties have not addressed the distinction between intrusion and damage, we do not further consider the complexities of these situations and whether the relevant event is the initial water intrusion that leads to damages (such as rot or mildew) or the onset of that damage (the rot or mildew).

### 3. Analysis

■ Here, in each home, water intrusion began before the July 16, 2004 effective date of respondent's policy. Both parties agree that in each of the six homes the damage was and, until remedied, is continuous and ongoing. Based on the expert's testimony and the continuous and ongoing nature of the damage, the record indicates that some of the damage occurred after July 16, 2004, and therefore within the time of the policy. Accordingly, we conclude that there is a presumption of coverage thereby triggering respondent's duty to defend.

Respondent attempts to rebut this presumption, arguing that there is no coverage and it has no duty to defend because appellant's liability can be clearly traced to a discrete identifiable event—appellant's improper application of stucco at the time of construction and that for each of the six homes the stucco work was completed long before July 16, 2004, the effective date of

its insurance policy. This was the analysis of the district court in ordering summary judgment. Respondent bases its discrete-identifiable-event argument on the rule that when the injury is continuous and ongoing we must determine "whether the continuous injury arose from some discrete and identifiable event .... [and if so] the policies on the risk at the time of that event are liable for all sums arising from the event." *Silicone*, 667 N.W.2d at 421. In *Silicone*, the supreme court stated that "[i]f we can identify a discrete originating event that allows us to avoid allocation, we should do so." *Id.* at 421–22. But property damage does not necessarily occur when defective stucco work is performed; rather, the insurer's duties depend on when the defective work causes damage to the property. *Singsaas*, 307 Minn. at 156, 238 N.W.2d at 880 (holding that the time of the occurrence is not the time the wrongful act was committed but the time the complaining party was actually damaged).

■ Here, the question is whether there was an identifiable, discrete, damage-causing event attributable to appellant's stucco work that occurred before the July 16, 2004 effective date of respondent's policy. We are aware that defective stucco work could ultimately lead to water intrusion that eventually causes damage. Our case-law, however, does not support the straightforward expedient of simply using the date stucco work was completed as the operative event date. Furthermore, the record on appeal does not indicate when the initial water intrusion resulted from appellant's defective stucco work or when such water intrusion actually caused damage. There is a difference between the misapplication of stucco and the actual failure of the misapplied stucco which allows damaging water intrusion. For our purposes, the date of the defective work can-

not be substituted for the commencement of water intrusion or resulting damage.

Our case has another complexity. Appellant is only responsible for defective stucco work, not other construction defects that may have first caused water intrusion. The expert testimony and inspection reports reveal numerous alleged construction defects, including: improper installation of windows, manufacturing and design defects of windows, lack of caulking, lack of flashing, architectural design defects, improper installation of roofing materials, and improper maintenance. All of these are causes that are apparently separate from the alleged defective stucco work. Any, all or some combination of these construction defects could have led to the water intrusion and this multi-cause dynamic may be different in each house. Respondent failed to establish that appellant's defects were the initial or triggering cause of the water intrusion which first led to damage in any of the six homes.

Because there is a genuine issue of material fact regarding (1) whether the non-stucco defects are responsible for the initial water intrusion and damage to each of the six houses; and (2) whether the stucco-related cause only contributed to the water intrusion after July 16, 2004, we conclude that at this stage of the litigation respondent has a duty to defend appellant and that the district court erred in granting summary judgment to respondent and remand this declaratory-judgment action for trial.[1]

### B. Reliance on Respondent's Experts

■ Appellant contends that the district court improperly relied on the expert opinions of the respondent to the exclusion of appellant's expert testimony. No genuine issue of material fact exists when "the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions." *DLH*, 566 N.W.2d at 71.

Here, the district court found, and neither party disputes, that in each of the six homes the water intrusion was continual. The district court held that even though appellant's expert stated that establishing the exact date at which the water intrusion first occurred in the various homes is impossible to scientifically determine, this testimony did not refute the conclusions of respondent's experts that in each case the water intrusion initially occurred sometime soon after construction was completed and that in each case "soon" would be prior to the effective date of respondent's policy.

We agree. There is no evidentiary basis for disagreeing with respondent's experts that the onset of water intrusion began before July 16, 2004. Appellant's expert simply made the point that a precise date of water intrusion could not be identified. Because appellant's expert presented evidence which only creates a metaphysical doubt as to exactly when the water intrusion occurred and did not create any doubt that it first occurred before July 16, 2004, when respondent's policy coverage began, the district court did not improperly determine facts or improperly weigh evidence. Moreover, there is no evidence in the record that the district court disregarded appellant's expert testimony. In fact, the district court order discusses the testimony of appellant's expert. Thus, appellant's

1. We recognize that the factual determination of the timing of the triggering event may be impossible. In those difficult cases allocation is appropriate. *Silicone,* 667 N.W.2d at 421. Allocation is meant to be the exception and not the rule. *Id.* However, the timing of the triggering event is a question for trial, not summary judgment.

argument fails to demonstrate that the district court improperly relied on respondent's experts or excluded appellant's expert testimony.[2]

## C. Reliance on Unpublished Opinion

Appellant next argues that the district court erred in relying on an unpublished decision of this court as the sole basis for dismissing the testimony of appellant's expert. The district court cited *Kootenia Homes, Inc. v. Federated Mut. Ins. Co.*, No. A05–278, 2006 WL 224162 (Minn.App. Jan.31, 2006), *review denied* (Minn. Apr. 18, 2006) for the proposition that a material fact issue is not created when an expert stated he could not determine with a reasonable degree of scientific certainty when moisture intrusion occurred in homes. Appellant is correct in its assertion that unpublished opinions of the court of appeals are not precedential. Minn.Stat. § 480A.08, subd. 3(c) (2006); *Vlahos v. R & I Constr.*, 676 N.W.2d 672, 676 n. 3 (Minn.2004) (stating that the district court erred "both as a matter of law and as a matter of practice" by relying on an unpublished opinion of the court of appeals, "stress[ing] that unpublished opinions of the court of appeals are not precedential," and noting that "[t]he danger of miscitation is great because unpublished decisions rarely contain a full recitation of the facts" and "[u]npublished opinions should not be cited by the district court as binding precedent."). But unpublished opinions may be persuasive. *Dynamic Air, Inc. v. Bloch*, 502 N.W.2d 796, 800 (Minn.App. 1993).

■ Here, the district court did not rely on *Kootenia* to summarily dismiss the testimony of appellant's expert. Rather, the district court found that there was no material fact issue because, as previously discussed, appellant's expert merely created a metaphysical doubt about when the damage could have occurred. Instead of citing *Kootenia* as precedential, we conclude that the district court cited *Kootenia* for its persuasive value.

## D. Frye–Mack Standard

Appellant argues that the district court erred by not performing a *Frye–Mack* analysis to determine whether expert testimony is proper on the issue of the timing of water intrusion. Appellant further claims that a *Frye–Mack* issue was raised because the affidavit of appellant's expert states that it is impossible to scientifically determine a discrete date when water intrusion and damage first occurred. *See Frye v. United States*, 293 F. 1013, 1013 (D.C.Cir.1923) (requiring that the scientific principle or test about which an expert is to testify be generally accepted within the relevant scientific community); *see also State v. Mack*, 292 N.W.2d 764, 768–69, 772 (Minn.1980) (accepting the *Frye* standard and requiring that the particular evidence derived from that test must have a foundation that is scientifically reliable).

■ "Minnesota adheres to the Frye–Mack standard to determine the admission of expert testimony based on scientific techniques and principles." *McDonough v. Allina Health Sys.*, 685 N.W.2d 688, 694 (Minn.App.2004). "Under the *Frye–Mack* standard, a novel scientific theory may be admitted if two requirements are satisfied." *State v. MacLennan*, 702 N.W.2d 219, 230 (Minn.2005). First, "[t]he district court must determine whether the novel scientific evidence offered is generally accepted in the relevant scientific community." *Id.* Second, a determination must be made regarding "whether the novel scien-

---

2. Because of our reversal on the duty to defend issue, our ruling on this expert issue may not be material to the district court's decision on remand.

tific evidence offered is shown to have foundational reliability." *Id.* This court reviews the first prong of the standard de novo; the second prong is reviewed under an abuse-of-discretion standard. *McDonough,* 685 N.W.2d at 694–95.

■ Appellant misapplies the *Frye–Mack* requirement. Respondent's experts testified that (1) water-related damage began to occur soon after water first entered each of the homes; (2) water likely first entered the home within two years of completion of construction; and (3) the nature and extent of damage present in each of the homes demonstrate that water damage had been ongoing for an extended time. This testimony was based on one expert's actual observation of three homes and on his review of various inspection reports of the other homes. There is no contention that water intrusion in homes presents a novel, scientific issue or is based on a theory requiring a *Frye–Mack* analysis. The dispute is over the differing conclusions of experts on the date or time range when water intrusion occurs.

We note that the expert's testimony satisfies the requirements of Minn. R. Evid. 702. This rule provides "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Minn. R. Evid. 702. Respondent's witnesses were qualified as experts and their credentials were not challenged. Thus, the district court did not err by not conducting a *Frye–Mack* analysis.

## II.

The second issue is whether the district court erred in denying appellant's attempt to add five additional claims to its declara-

tory-judgment action for the purposes of summary judgment. Appellant argues that the original complaint alleged that there may be future claims. Respondent points out that appellant did not attempt to add the five additional claims to the complaint until July 2007, when the parties filed cross-motions for summary judgment. This was ten months after respondent's response to the complaint.

Minnesota is a notice-pleading state that does not require absolute specificity in pleading, but rather requires only information sufficient to fairly notify the opposing party of the claim against it. *See* Minn. R. Civ. P. 8.01 (requiring pleading to include a "short and plain statement of the claim" showing entitlement to relief); Minn. R. Gen. Pract. 507 (stating that the statement of a claim shall "contain a brief statement of the amount and nature of the claim . . . ."); *Roberge v. Cambridge Coop. Creamery Co.,* 243 Minn. 230, 232, 67 N.W.2d 400, 402 (1954) (stating that pleadings must be framed so as to give notice of the claim asserted and permit the application of the doctrine of res judicata).

After a response has been filed, a party may amend its complaint only with the consent of the adverse party or by leave of the court. Minn. R. Civ. P. 15.01. "The decision to allow a party to amend its complaint after responsive pleading has been made lies within the sound discretion of the [district] court." *Wessin v. Archives Corp.,* 592 N.W.2d 460, 468 (Minn. 1999) (citation omitted).

■ Here, the complaint specifically names four claims for which appellant was seeking a declaratory judgment. Respondent received the complaint and timely filed its answer regarding the four specific claims. Appellant neither received leave of the district court to amend its complaint nor written consent from respondent. Al-

though the complaint alleges that there may be additional claims, this general reference to future claims does not provide information sufficient to fairly notify respondent of the duty to defend.

Appellant also argues that although respondent never formally agreed to litigate two additional cases that were not listed in the complaint, they were included in the scope of the action for summary judgment purposes, and the five cases in question should be similarly included. Although respondent did not object to the two additional claims that had been tendered for its defense prior to the cross-motions for summary judgment, the record indicates that respondent had ample opportunity to investigate these two claims and to place of record material relevant to their consideration by the district court incident to summary judgment motion.

We conclude the district court did not abuse its discretion or err in refusing to add the five additional cases to its consideration of summary judgment or to construe the pleadings to so include those five cases. However, we are remanding this matter for further proceedings. On remand, appellant may renew its request.

### III.

Appellant also argues that respondent's refusal to defend is inconsistent with its own internal procedures in at least one of its regional offices and that respondent has an obligation to handle appellant's claim more favorably. Appellant, however, cites no authority for this proposition and merely urges that public policy should prevent this adverse claim-handling behavior. Because no legal basis for this assertion is provided, we do not further consider it.

### DECISION

An insurer has a presumptive duty to defend under an occurrence-liability policy when a lawsuit is filed and it is arguable that damage has occurred within the terms of an insurance policy and during the policy period. Because the water-intrusion damage was continuous and ongoing and there are numerous construction defects alleged, any of which could have initially triggered the damage, we conclude that the district court erred in granting summary judgment in favor of respondent. For respondent to avoid the duty to defend, the record must clearly and convincingly establish that the onset of insured-caused water-intrusion damage occurred outside the effective dates of its policy and that allocation is not applicable. The district court's consideration of an unpublished decision of this court of appellant's expert witness's testimony was not improper. Furthermore, neither the lack of a ruling by the district court on the applicability of the *Frye–Mack* standard nor its refusal to include additional claims is error. We do not consider appellant's argument regarding respondent's internal-clean-handling policy.

**Reversed and remanded.**