ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,
Respondent,

v.

NATIONAL CHIROPRACTIC MUTUAL
INSURANCE COMPANY,
Appellant.

No. CX–92–1517.

Court of Appeals of Minnesota.

Feb. 23, 1993.

Review Denied April 29, 1993.

William M. Hart, Thomas H. Crouch, Meagher & Geer, Minneapolis, for appellant.

Timothy P. Tobin, Laura L. Myslis, Gislason, Dosland, Hunter & Malecki, Minnetonka, for respondent.

Considered and decided by HUSPENI, P.J., and SCHUMACHER and AMUNDSON, JJ.

## OPINION

HUSPENI, Judge.

Dr. Raymond Mielke and the Northwestern College of Chiropractic (the "college") were sued for malpractice. Both St. Paul Fire and Marine Insurance Company ("St. Paul") and National Chiropractic Mutual Insurance Company ("National"), which had issued professional liability policies covering Dr. Mielke and the college, provided defense. When the underlying action was settled shortly before submission to the jury, St. Paul contributed $700,000 and National Chiropractic contributed $100,000 to the settlement. Each insurer reserved the right to pursue indemnity or contribution claims against the other.

In the present action, each insurer seeks to recover its contribution to the settlement. The insurers stipulated to the appointment of the judge who presided at the trial of the underlying claim to serve as a

special arbitrator. The special arbitrator determined that both policies provided coverage and ordered the insurers to divide the cost of the settlement evenly. The trial court adopted the findings and order of the special arbitrator, judgment was entered, and National appealed. St. Paul seeks review of the trial court's determination that its policy provided coverage. We affirm.

## FACTS

Steven Feldman was a student at the college from September 1982 until November 1983. As a student at the college, Feldman was obligated to receive treatment at the college's student clinics, located both on and off the school campus, and staffed by more senior students who were supervised by licensed chiropractors.

Between December 21, 1982, and January 20, 1983, Feldman received treatment from Dr. Raymond Mielke and other personnel of the college in an effort to relieve symptoms of pain between his shoulder blades, leg weakness, inability to stand, difficulty with balance and inability to urinate. After January 29, 1983, Feldman visited the student clinic periodically for treatment of mid-thoracic muscle spasms.

Feldman was treated at home by clinic personnel on October 25, 1983, for mid-back pain. Later that same day he experienced sudden onset of ascending paralysis and was immediately hospitalized. A myelogram revealed an obstruction in the spinal cord and surgery ensued. Feldman's paralysis had been caused by the rupture of an arteriovenous malformation on his spine. He is permanently paralyzed from mid-chest down.

Feldman brought suit against the college, Dr. Mielke and others, alleging the college and Mielke failed to conduct accurate and adequate evaluations prior to October 26, 1983, failed to refer Feldman to a medical doctor for evaluation and treatment prior to October 26, 1983, and failed to act in other appropriate ways. The college and Dr. Mielke tendered defense of the suit to respondent St. Paul and appellant National.

The St. Paul policy, effective from April 1, 1982, to April 1, 1983, provided:

**What This Agreement Covers**

This agreement provides coverage for professional liability claims made against you—the person or persons named under "Individuals" in the Coverage Summary. It also covers professional liability claims made against any organization named in the Coverage Summary. To be covered, claims must be based on events that happen while this agreement is in effect and arise out of the profession named in the Coverage Summary.

The National policy effective from April 1, 1983, to April 1, 1984, provided:

**Coverage Agreement**

The company will pay on behalf of the insured up to the limits stated in the Declarations, all sums to which this insurance applies, and which the insured shall be legally obligated to pay as damages because of injury caused by accident arising out of the rendering of or failure to render professional services to a patient during the policy period.

National reserved its right to claim the injury to Feldman did not arise out of the rendering or failure to render professional services to him during National's policy period. St. Paul defended without reserving its right to deny coverage.

At trial, Feldman focused on the events of December 1982 and January 1983. Although he testified about treatment he received at the student clinic during the period January 1983 to October 1983, for symptoms similar to those experienced in December 1982 and January 1983, the emphasis at trial was on the failure of Dr. Mielke and the college to refer Feldman to a medical doctor when he was experiencing paralysis.

The parties settled all claims after both sides had presented their cases, but before the matter was submitted to the jury. Pursuant to the settlement, St. Paul contributed $700,000, National contributed $100,000. Each insurer reserved the right to seek indemnity from the other.

Subsequent to the commencement of the present action, both insurers stipulated to

appointment as special arbitrator of the judge who had presided at the trial of Feldman's claim against the college and Dr. Mielke. In the findings, the special arbitrator stated:

> Steven L. Feldman experienced seven separate episodes which were symptomatic of the arteria venous malformation which eventually ruptured and caused the pressure on his spinal column and consequent permanent paralysis. The episodes so experienced occurred as follows:
>
> a. On or about December 5, 1982;
> b. On or about December 20, 1982;
> c. On or about January 10, 1983;
> d. In the month of July 1983;
> e. In the month of September 1983;
> f. On or about October 23, 1983;
> g. On or about October 25, 1983.

In an accompanying memorandum, the special arbitrator stated:

> Unless the evidence offered during a trial is not germane to the issues in the action, or constitutes such surprise as to unduly prejudice the parties against whom it is being offered, the *evidence* submitted is received and constitutes the *claim* or claims being made and supersedes the otherwise defined stated claim of a party. * * * Clearly, such evidence included Steven L. Feldman's testimony that in July 1983 and in September 1983 he experienced symptoms of a like nature to those he had experienced beginning on or about December 5, 1982, and subsequently on or about December 20, 1982, on or about January 10, 1983, on or about October 23, 1983 and October 25, 1983. It was then a fact question for the jury to determine that if causal negligence did occur, whether it occurred on or about December 5, 1982, on or about December 20, 1982, on or about January 10, 1983, in the month of July 1983, in the month of September 1983, or whether it continued for the period from on or about December 5, 1982 through on or about October 23, 1983. At the time the settlement was negotiated, the policies of each insurance company were equally exposed to the risk, and therefore using the approach outlined immediately above, each company was subject to pay 50% of the settlement.

(Emphasis in original.) Based on the findings of the special arbitrator, National was required to reimburse St. Paul $300,000.

## ISSUES

1. Did the trial court err in requiring National to provide indemnification for the claims brought by Feldman?

2. Did the trial court err in determining the St. Paul policy provides coverage for Feldman's claims?

## ANALYSIS

### 1. *Standard of Review*

■ The parties stipulated to the appointment of a special arbitrator. An arbitrator's authority is determined by the arbitration agreement between the parties. *See Johnson v. American Family Mut. Ins. Co.*, 426 N.W.2d 419, 420 (Minn.1988). The parties in this case agreed that the special arbitrator was to make findings and a decision, and the trial court would execute an order for judgment based on the special arbitrator's findings. The order appointing a special arbitrator provided:

> the parties have reserved their appeal rights and shall be entitled to appeal this case as if it had been disposed of by summary judgment by the undersigned.

National alleges that it is a misnomer to treat the findings in this case as the findings of an arbitrator, and argues instead that the special arbitrator should have determined what claims Feldman *actually* made, rather than what claims Feldman *might have* made.

■ If the special arbitrator exceeded his authority by determining an issue not submitted, the resulting order may be vacated. *David Co. v. Jim W. Miller Constr., Inc.*, 444 N.W.2d 836, 840 (Minn. 1989). National bears the burden of demonstrating the special arbitrator exceeded his authority. *Hilltop Constr., Inc. v. Lou Park Apts.*, 324 N.W.2d 236, 239 (Minn. 1982).

■ We conclude National has not sustained its burden. While we agree the special arbitrator was asked to determine what claims Feldman made, we do not agree that the special arbitrator, in fact, determined what claims Feldman might have made. The special arbitrator's finding that Feldman presented a claim for negligence occurring during National's policy period merely recognizes that there was sufficient evidence of negligence during that period to go to the jury. We do not deem Feldman's concentration on the events of December 1982 and January 1983 sufficient to relieve National of coverage responsibility.

Feldman's trial strategy was clearly to establish his right to recovery by focusing on the strongest evidence of negligence. He had no incentive to try to establish that one insurer or another would be obligated to pay any award. Nor would it be proper to impose upon Feldman a duty to recognize that one insurer bore responsibility for alleged negligence occurring prior to April 1, 1983; that another insurer assumed such responsibility from and after April 1, 1983; and that he must present evidence in such a manner that each insurer's liability, if any, would be capable of easy determination.

■ We do not, however, agree with the argument of St. Paul that additional evidence should be admissible in this declaratory judgment action to establish what Feldman might have claimed. The claims that the parties settled and which gave rise to the obligations at issue in this case were those very claims presented to the jury in the underlying litigation. It would be inappropriate to consider in this declaratory action hypothetical claims that might have been made in the underlying suit. The special arbitrator properly determined what claims went to the jury and were settled. There is nothing in the parties' written agreement limiting the general rule that the special arbitrator's findings are final. Summary judgment was properly based on those findings.

■ In reviewing a summary judgment, this court must determine whether there are any genuine issues of material fact and whether the trial court correctly applied the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). Because the arbitrator's findings are final, the only issues involve interpretation of the insurance policies. Interpretation of the language of an insurance contract is a question of law which this court reviews de novo. *Vang v. Vang,* 490 N.W.2d 647, 650 (Minn.App. 1992) (citing *Iowa Kemper Ins. Co. v. Stone,* 269 N.W.2d 885, 887 (Minn.1978)), *pet. for rev. denied* (Minn. Nov. 17, 1992).

### 2. *National Coverage*

■ An insurer assumes two duties to its insured: the duty to defend and the duty to indemnify. The duty to defend arises when a claim is brought against the insured alleging facts which, if established, would support a recovery within the policy's coverage. *See United States Fidelity and Guar. Co. v. Louis A. Roser Co.,* 585 F.2d 932, 936 (8th Cir.1978). The duty to indemnify is not as broad. In return for the payment of a premium, "an insurer assumes certain risks that otherwise would be the obligation of the insured." *Knutson Constr. Co. v. St. Paul Fire & Marine Ins. Co.,* 396 N.W.2d 229, 233 (Minn.1986), *quoted in Grossman v. American Family Mut. Ins. Co.,* 461 N.W.2d 489, 494 (Minn. App.1990), *pet. for rev. denied* (Minn. Dec. 20, 1990). In the present case, the question is whether the settlement in the underlying action included claims for risks National agreed to assume.

■ The settlement of a lawsuit is contractual in nature. *Ryan v. Ryan,* 292 Minn. 52, 55, 193 N.W.2d 295, 297 (1971); *Beach v. Anderson,* 417 N.W.2d 709, 711 (Minn.App.1988), *pet. for rev. denied* (Minn. Mar. 23, 1988). In determining what claims were settled, it is appropriate to consider the circumstances and events leading up to the settlement. *See MICO, Inc. v. Wagner Elec. Corp.,* 802 F.2d 322, 323 (8th Cir.1986).

■ The settlement in the underlying suit was reached just prior to submis-

sion of Feldman's case to the jury. In order to determine what claims were settled, it is necessary to know what claims were to be submitted to the jury. As the special arbitrator correctly noted, the evidence presented to the jury constitutes the claim of a party, superseding the party's description of the claim. For this reason, we believe that National's reliance on Feldman's trial memoranda, answers to interrogatories and other statements to argue that Feldman only claimed negligent acts occurring in December 1982 and January 1983 is misplaced.

The special arbitrator, who was also the judge at the Feldman trial, found that the claims of negligence Feldman presented included claims of negligence after April 1, 1983, occurring during National's policy coverage. Episodes identified by the special arbitrator as leading to Feldman's paralysis occurred in July 1983, September 1983, October 23, 1983, and October 25, 1983.

We note further that Feldman's complaint alleged the college and Dr. Mielke failed to conduct proper evaluations before October 26, 1983, and failed to refer Feldman to a medical doctor before October 26, 1983. The allegations of the complaint support an inference that Feldman claimed a continuing duty to refer, beginning in St. Paul's policy period and extending into National's policy period. The events of October 25, 1983, provide a further basis for concluding Feldman's claims included negligence during National's policy period.

### 3. *St. Paul's Coverage*

St. Paul, relying on *Singsaas v. Diederich*, 307 Minn. 153, 238 N.W.2d 878 (1976), contends its policy provides no coverage because Feldman's ultimate *injury* did not occur during the St. Paul policy period. We find no merit in this argument.

The extent of St. Paul's liability is determined by the language of the insurance contract with its insured. *See Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960). The St. Paul policy provides coverage to the insured for claims that are:

based on events that happened while this agreement is in effect and arise out of the profession named in the Coverage Summary.

There is no requirement in the St. Paul policy requiring the *injury* to occur during the policy period. In *Singsaas*, the policy applied to bodily injuries caused by an "occurrence," defined as:

an accident, including injurious exposure to conditions *which results, during the policy period, in bodily injury.*

*Singsaas*, 307 Minn. at 155, 238 N.W.2d at 880 (emphasis added). In addition, the policy in *Singsaas* applied "only to bodily injury * * * which occurs during the policy period." *Id.* The St. Paul policy, in contrast, provides liability coverage for claims against the insured that are based on *events* that occurred during the policy period and arise out of the profession of the insured. St. Paul's policy, unlike the policy at issue in *Singsaas*, does not require that the ultimate injury occur during the policy period for coverage to be found. Clearly, critical events upon which Feldman's claims were based occurred during St. Paul's period of coverage, and the St. Paul policy therefore applies.

### DECISION

The special arbitrator did not exceed his authority in deciding the issue presented. The trial court correctly concluded both policies provide coverage.

Affirmed.