**JENOFF, INC., Appellant,**

v.

**NEW HAMPSHIRE INSURANCE COMPANY, Respondent.**

No. C3–95–2409.

Court of Appeals of Minnesota.

April 2, 1996.

Certiorari Granted May 21, 1996.

Jay M. Quam, Lora Esch Mitchell, Fredrikson & Byron, P.A., Minneapolis, MN, for Appellant.

Patrick D. Reilly, Deborah H. Mande, Michael R. Peterson, Patrick D. Reilly Law Office, Minneapolis, MN, for Respondent.

Considered and decided by PARKER, P.J., and SCHUMACHER and MANSUR*, JJ.

## OPINION

PARKER, Judge.

Jenoff, Inc., was sued for damages allegedly resulting from its installation of a heat detection and fire suppression system. The damages occurred in 1993, as a result of a fire.

Jenoff tendered its defense to New Hampshire Insurance Company, which had insured Jenoff at the time it installed the system in 1976. New Hampshire Insurance Co. refused coverage, and Jenoff sought a declaration of coverage under the policy. The district court granted New Hampshire's summary judgment motion and dismissed Jenoff's action. Jenoff appeals from the judgment of dismissal. We reverse.

## FACTS

Jenoff is in the business of installing heat detection and fire suppression systems. In 1976, Jenoff installed a system in a grain elevator. At that time, Jenoff was insured by New Hampshire Insurance Company ("New Hampshire") under an umbrella liability policy with a policy period of January 1, 1976, to January 1, 1977. Jenoff was also insured by New Hampshire under a property owner's policy.

---

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

The grain elevator burned down in 1993. The grain elevator's insurance company (asserting a subrogation claim) and others sued Jenoff for approximately $2.5 million. Jenoff tendered defense of the action to New Hampshire, which denied liability under the 1976–77 policies because the fire did not occur until 1993.

The district court granted New Hampshire's summary judgment motion, ruling that the 1976–77 umbrella liability policy did not cover damages that occurred in 1993.

## ISSUES

I. Does New Hampshire's policy cover damages that occurred after the policy period when the event allegedly causing the damages occurred within the policy period?

II. Is Jenoff entitled to attorney fees incurred in defending the underlying lawsuit and pursuing this action against New Hampshire?

## DISCUSSION

### I.

New Hampshire's 1976–77 umbrella liability policy insured Jenoff for personal injury or property damage caused by, arising out of, or the result of an "occurrence." The policy applied "only to occurrences happening anywhere during the policy period." The policy defined an "occurrence" as

an event, including continuous or repeated exposure to conditions, which result in Personal Injury or Property Damage neither expected nor intended from the standpoint of the insured.

New Hampshire argues that there was no "occurrence" during the policy period of 1976–77, because the "occurrence" was the fire in 1993, which was outside the policy period. The district court agreed, concluding that the term "occurrence" is not to be applied at the time that a wrongful act is committed, but the time the damage actually occurs.

Jenoff argues that the "occurrence" in this case was the allegedly defective installation of the fire system in 1976, during the policy period. In the alternative, Jenoff argues

that the New Hampshire policy language is ambiguous and therefore should be construed in Jenoff's favor. We conclude that, as a matter of law, the policy language is not ambiguous, but unambiguously covers this claim.

■ Ultimately, on appeal, the interpretation and construction of an insurance policy "is a question of law, subject to de novo review." *Haarstad v. Graff,* 517 N.W.2d 582, 584 (Minn.1994). Construction of New Hampshire's policy requires an understanding of the difference between a "claims made" policy and an "occurrence" policy.

Claims made policies provide coverage for claims first made during the life of a policy. * * * Occurrence policies, however, protect a policyholder from liability for any act done while the policy was in effect. *Fairview Hosp. & Health Care Servs. v. St. Paul Fire & Marine Ins.,* 518 N.W.2d 41, 44 (Minn.App.1994) (citing *St. Paul Fire & Marine Ins. v. Barry,* 438 U.S. 531, 535 n. 3, 98 S.Ct. 2923, 2926 n. 3, 57 L.Ed.2d 932 (1978)), *aff'd* 535 N.W.2d 337 (Minn.1995). Coverage is available under an occurrence policy "if the negligent act or omitted act occurs within the policy period, regardless of the date of discovery." 6B Appleman, *Insurance Law and Practice,* § 4262, at 87 (1979).

■ In *Fairview Hospital,* this court noted that a manifestation-of-injury rule is more consistent with a claims made policy. 518 N.W.2d at 44. Similarly, policy language requiring that damage must occur during the policy period would be more consistent with a claims made policy. We conclude that Jenoff's umbrella liability policy, which did not specify that damage must occur during the policy period, was not a claims made policy, but an occurrence policy.

New Hampshire appears to have been aware of the difference between claims made and occurrence policies when it issued Jenoff the property owner's policy and the umbrella liability policy in 1976. The property owner's policy specifically stated that it covered "damage which occurs during the policy period." This language demonstrates that New Hampshire knew how to limit coverage to damages occurring during a policy period.

We agree with Jenoff that New Hampshire's decision to exclude this language from the umbrella liability policy was significant.

The district court cited *Northern States Power Co. v. Fidelity & Cas. Co.*, 523 N.W.2d 657, 662 (Minn.1994) ("*NSP* "), in support of a conclusion that Jenoff's umbrella liability policy required damages during the policy period. In *NSP*, the court stated in a footnote:

> To establish coverage under a particular policy, an insured must demonstrate that damage "occurred" while the policy was in effect.

*Id.* at 659 n. 3 (quoting William R. Hickman and Mary R. De Young, *Allocation of Environmental Cleanup Liability Between Successive Insurers*, 17 N. Ky. L.Rev. 291, 293 (1990)). The *NSP* court later stated, "in order to trigger a policy the insured must show that *some damage* occurred during the policy period." *NSP*, 523 N.W.2d at 663.

The *NSP* court discussed several theories employed by courts to determine which policies are "on the risk" for purposes of allocating damages among several serial environmental impairment liability insurers. The court concluded:

> Minnesota follows the "actual injury" or "injury-in-fact" theory to determine which policies have been triggered by an occurrence causing damages for which an insured is liable.

*Id.* at 662. The district court concluded that, according to *NSP*, an insurance company may be held liable only for damages that occur within a policy period.

We disagree and conclude that *NSP* is of little assistance here. Unlike the policy language in this case, the policy considered by the court in *NSP* specifically limited coverage to damages "incurred 'during the policy period.'" 523 N.W.2d at 663. Furthermore, in *NSP* the court was considering the issue of how to allocate liability among several serial insurance companies for ongoing environmental damages occurring over a period of time. The *NSP* court itself recognized that "[e]nvironmental liability insurance cases create special problems for litigants and courts." *Id.* at 660.

The district court also cited *Singsaas v. Diederich*, 307 Minn. 153, 238 N.W.2d 878 (1976). In *Singsaas*, a business negligently performed some work on a lift while insured by Western Casualty and Surety Company. The business cancelled its policy with Western, and a month later, a worker was injured on the lift as a result of the negligence that had occurred during the policy period. *Id.* at 155, 238 N.W.2d at 879–80.

The policy in *Singsaas* specifically defined "occurrence" as

> an accident, including injurious exposure to conditions which results, *during the policy period,* in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

*Id.* at 155, 238 N.W.2d at 880. The policy also stated that it applied only to bodily injury that occurred "during the policy period." *Id.* The court concluded that the worker's injuries were not covered by the policy because the injuries did not occur during the policy period. *Id.* at 156–59, 238 N.W.2d at 880–82.

The language in New Hampshire's policy is significantly different from the language of the policy in *Singsaas*. Unlike the policy in *Singsaas*, New Hampshire's umbrella liability policy did not limit coverage to damages that occurred during the policy period but, rather, damages that result from an event occurring during the policy period.

The *Singsaas* court distinguished *Kissel v. Aetna Cas. & Sur. Co.*, 380 S.W.2d 497 (Mo. Ct.App.1964), in which an insurance policy did not contain language requiring that damages occur during the policy period. In *Kissel*, the insureds were sued for damages allegedly resulting from a careless and negligent excavation. The *Kissel* court noted:

> It appears clear to us that when plaintiffs purchased the comprehensive general liability policy * * * they meant to purchase and obtain general contractors protection against comprehensive claims arising out of their work and services * * * including tort claims arising from their excavating operations.

*Id.* at 506. The court concluded that the damages resulting from the excavation were

covered by the policy in effect at the time of the excavation, even though the damages occurred outside the policy period. *Id.* at 509.

We find *Kissel* to be directly on point. Just as in *Kissel,* Jenoff's policy did not state that it covered only damages occurring during the policy period. Consistent with *Kissel,* we conclude that Jenoff's policy covered damages resulting from negligent acts that occurred during the policy period.

We agree with Jenoff that its policy language is similar to that in *St. Paul Fire & Marine Ins. Co. v. National Chiropractic Mut. Ins. Co.,* 496 N.W.2d 411 (Minn.App. 1993), *review denied* (Minn. Apr. 29, 1993). There, a school's policy provided liability coverage for "claims * * * based on events that happen while this agreement is in effect." *Id.* at 413. A student was treated at the school by a doctor, and he later sued the school and doctor, alleging that a failure to evaluate him properly had resulted in permanent paralysis. *Id.* The school's insurer claimed that its policy provided no coverage because the student's ultimate injury did not occur during the policy period. *Id.* at 416.

We rejected the insurer's argument, concluding that the policy provided coverage for injuries resulting from the doctor's negligence during the policy period. *Id.* We concluded that the policy, unlike the policy in *Singsaas,* did not require that the ultimate injury occur during the policy period. *Id.*

Similarly, we conclude in this case that Jenoff's policy was triggered by events that occurred during the policy period; the policy did not require the ultimate damages to occur during the policy period.

Businesses such as Jenoff purchase liability policies to afford protection from a wide range of liabilities. Jenoff's business of designing and installing fire protection systems appears to be the type of business in which damages often do not manifest themselves until years later. Such liability coverage is expected to protect against damages *resulting from* negligence during the policy period,

including liabilities that were unknown at the time.[1]

### II.

Jenoff seeks attorney fees and costs incurred in defending the underlying lawsuit and in prosecuting this declaratory judgment action against New Hampshire. Because New Hampshire's policy covers the "occurrence" of Jenoff's allegedly wrongful act in 1976, Jenoff is entitled to recover the attorney fees and costs of litigation in the underlying lawsuit and those fees and costs incurred in bringing this action against New Hampshire. *Lanoue v. Fireman's Fund American Ins. Cos.,* 278 N.W.2d 49, 55 (Minn.1979); *Morrison v. Swenson,* 274 Minn. 127, 142 N.W.2d 640 (1966).

### DECISION

New Hampshire's umbrella liability policy covered damages allegedly resulting from Jenoff's wrongful act during the policy period, even if the resulting damages occurred after the policy period. Jenoff is entitled to attorney fees incurred in this action and in the underlying lawsuit.

**Reversed.**

---

1. As Jenoff argues, if we were to adopt New Hampshire's interpretation of the policy, each year Jenoff would be forced to purchase insurance covering potential claims for all prior years during which it had installed its systems. Each year, this coverage would become more and more expensive—eventually becoming prohibitive.