ZURICH REINSURANCE (UK) LIMITED, a foreign corporation, et al., Respondents (C5–99–1870), Appellants (CX–99–1878),

v.

CANADIAN PACIFIC LIMITED, a foreign corporation, d/b/a CP Rail System, Canadian Pacific Limited, d/b/a Soo Line Corporation, a division and subsidiary of Canadian Pacific Limited, and Soo Line Railroad Company, Appellants (C5–99–1870), Respondents (CX–99–1878).

Nos. C5–99–1870, CX–99–1878.

Court of Appeals of Minnesota.

July 3, 2000.

Jerome B. Abrams, Laurie A. Heyerdahl, Abrams & Smith, P.A., Minneapolis, MN (for appellants Zurich Reinsurance, et al.).

John M. Sheran, Leonard, Street & Deinard, Minneapolis, MN (for respondents Canadian Pacific, et al.).

Considered and decided by TOUSSAINT, Chief Judge, AMUNDSON, Judge, and HUSPENI, Judge.

## OPINION

DORIS O. HUSPENI,* Judge.

Both appellants Zurich Reinsurance (UK) Limited, et al. (Zurich), and respondents Canadian Pacific Limited, et al. (Canadian Pacific), appeal from summary judgments granted against each of them in a case concerning Zurich's obligation to indemnify Canadian Pacific for payments made in a personal injury settlement. Zurich argues the settlement is unreasonable because (1) it is excessive; (2) Canadian Pacific failed to cooperate, demonstrating bad faith; and (3) a portion of the settlement was to extinguish possible claims for punitive damages, which they contend are not covered. Zurich also argues that it should not have been sanctioned attorney fees for failure to admit. Canadian Pacific argues summary judgment against Zurich was appropriate and requests that this court reconsider the summary judgment entered against it only if the summary judgment against Zurich is reversed. We affirm.

## FACTS

On February 27, 1994, 16–year–old C.Y. was horribly burned and disfigured in an explosion outside his home. A derailment of a train owned by Canadian Pacific created a butane gas leak in one of the tank cars that caught fire and caused the explosion. C.Y. and his parents and brother (the Yales) also had their home and all of their property destroyed by the explosion. After internal investigations, Canadian Pacific concluded a sudden rupture in a section of the rail caused the derailment. It was determined that failure of the railroad to properly maintain the track led to the accident. Recognizing its liability, Canadian Pacific began settlement negotiations. Initial settlement negotiations were unsuccessful, and the Yales sued Canadian Pacific in federal district court.

Canadian Pacific was self-insured for the first $7,274,000 [1] of liability. The next $10,911,000 was insured by indemnity policies issued by Zurich (60%) and Commerce and Industry Company of Canada (40%). Another insurer covered liability in excess of $18,185,000.

As part of its policies, Zurich had the rights to "associate with [Canadian Pacific] in the defense and control of any claim," to have access to records, and to be kept informed. Zurich and Canadian Pacific were required to cooperate in the defense of claims. The policies did not have a clause requiring Zurich's consent before Canadian Pacific could settle a claim. The policies included punitive damages exclusions.

Several people evaluated the Yales' case for Canadian Pacific. Estimates of possible jury verdicts for compensatory damages ranged from $15 to $27 million. Canadian Pacific also researched the possibility of punitive damages. On May 20, 1996, a day-long mediation conducted by a U.S. magistrate judge resulted in a settlement of $21,850,000, in addition to money already provided by Canadian Pacific to cover some of C.Y.'s medical costs and the Yales' relocation costs. The total was approximately $24 million. Zurich's representative attended at least part of this mediation.

Canadian Pacific submitted a claim to Zurich for the full amount of its insurance coverage. Zurich paid Canadian Pacific $9,238,655 in Canadian currency, the amount it believed the settlement should have been worth. It denied the rest of the claim, leaving $4.2 million unpaid. Zurich then sought a declaratory judgment that

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. The policies are written in Canadian currency, but the trial court judgment was entered in United States dollars. Both parties agreed to the conversion rate and computation. Unless otherwise noted, the amounts referred to herein are in United States dollars.

the settlement between Canadian Pacific and the Yales was unreasonable, improper, and not binding on Zurich. Zurich also asked the trial court to allocate the amount of the settlement that was compensatory in nature. Defendants alleged various counterclaims.

The trial court granted summary judgment on all claims. Canadian Pacific then moved for sanctions against Zurich under Minn. R. Civ. P. 37.03 for failure to admit that

under the terms of the Zurich policy and the C & I policy [Canadian Pacific] could enter into a reasonable settlement of claims against them without the authorizations or consent of [Zurich], without compromising any right of indemnification for the Yale claims.

The trial court ordered Zurich to pay $25,000 of Canadian Pacific's attorney fees. The trial court also ordered Zurich to pay the outstanding amount of their policy limits and prejudgment interest. The total judgment against Zurich was $4,829,670.33. Zurich appeals the summary judgment and the sanctions. Canadian Pacific opposes Zurich's appeal and also appeals the summary judgment on its counterclaims, asking this court to address its summary judgment appeal only if summary judgment against Zurich is reversed.

## ISSUES

I. Was Zurich entitled to the protection afforded insurers in Miller–Shugart settlements?

II. Did Zurich raise a genuine issue of material fact to avoid summary judgment as to whether the settlement included punitive damages?

III. Did the trial court abuse its discretion in sanctioning Zurich for failing to admit the contract did not require Canadian Pacific to get Zurich's consent before entering into a reasonable settlement?

## ANALYSIS

In reviewing an order for summary judgment, this court asks: "(1) whether there are any genuine issues of material fact and (2) whether the lower courts erred in their application of the law." *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn. 1990) (citation omitted). We must view the record in the light most favorable to the party opposing summary judgment. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). To establish a genuine issue of material fact, the party resisting summary judgment must present evidence that creates more than a metaphysical doubt as to a factual issue. *DLH, Inc. v. Russ,* 566 N.W.2d 60, 71 (Minn.1997). The appellant cannot rest on mere averments, but must show substantial evidence of a genuine issue for trial. *Id.* at 69–71.

On appeal from summary judgment interpreting an insurance contract, this court asks whether the trial court erred in construing the contract. The interpretation of an insurance policy is a question of law, which this court reviews de novo. *Meister v. Western Nat'l Mut. Ins. Co.,* 479 N.W.2d 372, 376 (Minn.1992); *see also State Farm Ins. Cos. v. Seefeld,* 481 N.W.2d 62, 64 (Minn.1992) ("Insurance coverage issues are questions of law for the court."). Insurance contract exclusions must be construed narrowly against an insurance company. *Hubred v. Control Data Corp.,* 442 N.W.2d 308, 310 (Minn. 1989).

### I.

Zurich claims it is entitled to the protection afforded insurers in Miller–Shugart settlements because it had no control over the settlement. In *Miller v. Shugart,* the Minnesota Supreme Court held that in third-party indemnity cases, settlements must be reasonable and prudent. *Miller v. Shugart,* 316 N.W.2d 729, 735 (Minn. 1982). Zurich's reliance on Miller–Shugart is misplaced. Insurers faced with Miller–Shugart settlements are granted equitable protection because of the possibility of col-

lusion between the parties creating an artificially high settlement when the insured has no personal liability.

In an authentic *Miller–Shugart* settlement, the insurer has denied all coverage, and the abandoned insured, left on its own, agrees with the plaintiffs that judgment in a certain sum may be entered against it in return for the plaintiffs releasing the insured from any personal liability.

*Buysse v. Baumann–Furrie & Co.* 481 N.W.2d 27, 29 (Minn.1992).

■ In this case, Zurich did not deny coverage completely and did not abandon Canadian Pacific. Instead, it requested to be included and informed by Canadian Pacific about the defense strategy and settlement negotiations. This case also differs from a Miller–Shugart settlement because evidence shows that Canadian Pacific negotiated extensively and did not avoid personal liability. The record demonstrates negotiations that spanned months and culminated in a 10–hour settlement negotiation session with a federal magistrate. Finally, far from avoiding personal liability, Canadian Pacific was itself liable for more than $8 million under the settlement. Canadian Pacific is also required to pay a retroactive premium to its other insurer. Because this settlement does not qualify as a Miller–Shugart settlement, Zurich does not qualify for the equitable protections provided in that case.

## II.

Zurich argues that summary judgment was inappropriate because questions of material fact remain concerning the reasonableness of the settlement. Zurich argues that the settlement included money to avoid punitive damages, which are not covered under the policy. Zurich also contends that the settlement award is excessive and that entering into the settlement without its agreement constituted bad faith by Canadian Pacific. There is no merit in Zurich's claims.

■ First, with regard to whether sufficient facts were raised to show the settlement included money to avoid punitive damages, we generally refuse to consider "hypothetical claims that might have been made in the underlying suit." *St. Paul Fire & Marine Ins. Co. v. National Chiropractic Mut. Ins. Co.*, 496 N.W.2d 411, 415 (Minn.App.1993), *review denied* (Minn. Apr. 29, 1993); *see also Safeway Stores, Inc. v. National Union Fire Ins. Co.*, 64 F.3d 1282, 1288 (9th Cir.1995) (considering only "claims actually settled, which are defined by the allegations in the complaint"); *Caterpillar, Inc. v. Great Am. Ins. Co.*, 62 F.3d 955, 964 (7th Cir.1995) ("[A]n insurer may not propose theories of liability never at issue in a complaint addressing allocation."). This court considers the circumstances and events resulting in the settlement to determine what claims were actually settled. *St. Paul Fire & Marine Ins. Co.*, 496 N.W.2d at 415.

The Yales did not claim punitive damages, and counsel for both the Yales and Canadian Pacific indicated that the settlement was based on compensatory damages and in no way included punitive damages. In his deposition, the Yales' counsel said there was no discussion of punitive damages during the settlement discussions. When asked about facts forming the basis for his opinion about punitive damages, he added:

> That was not my conversation with the defendant. I never claimed punitive damages against the defendant. We did not settle this case based on punitive damages. We based the settlement on the basis of compensatory damages. But if the case was going to be tried, I certainly intended * * * to attempt to prove the case for punitive damages and make such a claim.

Zurich, in arguing that Canadian Pacific and its counsel considered the possibility of the Yales claiming punitive damages if the case went to trial, cites Canadian Pacific's internal memoranda concerning punitive damages and the fact that Canadian

Pacific hired outside counsel to research the issue of punitive damages. Further, as part of its argument that the settlement is excessive, Zurich concludes that the settlement amount includes money for punitive damages. But Zurich did not present any facts linking considerations of the possibility of punitive damages to the actual settlement amount. In contrast, Canadian Pacific presented testimony and damage evaluations showing punitive damages were not a consideration in the settlement. Zurich speculates that it is possible that the Yales *might* have amended their complaint to include a claim for punitive damages, and that the trial court *might* have allowed it; therefore, argues Zurich, the settlement *might* include sums that reflect punitive damages. But the record does not contain facts that substantially support this speculation.

The record shows that punitive damages were never added to the complaint and testimony indicates that they were not considered in reaching the settlement. Because Zurich failed to produce substantial evidence supporting the argument that the settlement includes money for punitive damages, it has not sufficiently raised the issue of punitive damages to avoid summary judgment. *See DLH, Inc.,* 566 N.W.2d at 69–71 (requiring substantial evidence that raises more than a hypothetical doubt about a material factual issue for trial).

 Second, Zurich argues that Canadian Pacific acted in bad faith by settling the Yales' claim despite Zurich's rejection of the settlement terms. It is undisputed that the insurance contract lacks a clause requiring Canadian Pacific to get Zurich's consent before settling a case. Absent such a protective clause, it is difficult to comprehend how Canadian Pacific could have been acting in bad faith by settling. Canadian Pacific knew Zurich did not agree with the settlement amount, but without a clause requiring consent, agreeing to a settlement despite an insurer's opposition does not amount to bad faith in

the absence of evidence of intent to defraud or collude. *See, e.g., St. Paul Fire & Marine Ins. Co. v. Perl,* 415 N.W.2d 663, 667 (Minn.1987) (upholding indemnity agreement when insurer did not incorporate language to protect itself and there was no intent to defraud). Because Zurich has not created a fact question as to whether Canadian Pacific acted in bad faith, summary judgment was appropriate.

 Furthermore, as the trial court noted numerous times, Zurich could have protected itself from its current situation by simply including in the contract a phrase requiring its consent before an insured may settle. Because Zurich did not choose to protect itself by inserting a control clause in the contract, this court will not use its equity powers to read a reasonableness requirement into the indemnity insurance policy.

### III.

 Levying civil penalties is within the trial court's discretion. *State v. Alpine Air Prods.,* 490 N.W.2d 888, 897 (Minn.App.1992), *aff'd,* 500 N.W.2d 788 (Minn.1993). *See also Przymus v. Commissioner of Pub. Safety,* 488 N.W.2d 829, 832 (Minn.App.1992) ("The choice of sanctions under Minn. R. Civ. P. 37.02(b) for failure to comply with discovery is within the trial court's discretion."), *review denied* (Minn. Sept. 15, 1992). Absent an abuse of discretion, this court will not reverse a trial court's award or denial of attorney fees. *Becker v. Alloy Hardfacing & Eng'g Co.,* 401 N.W.2d 655, 661 (Minn. 1987). This court must uphold the trial court's findings on the reasonable value of attorney fees unless they are clearly erroneous. *Amerman v. Lakeland Dev. Corp.,* 295 Minn. 536, 537, 203 N.W.2d 400, 400–01 (1973).

The Minnesota Rules of Civil Procedure provide for sanctions against a party that "fails to admit * * * the truth of any matter as requested pursuant to Rule 36 * * * if the party requesting the admis-

sions thereafter proves * * * the truth of any such matter." Minn. R. Civ. P. 37.03. The sanction takes the form of paying the reasonable expenses, including attorney fees, the opposing party incurred in proving the truth of the matter. *Id.* There are four exceptions: (1) the request was objectionable, (2) the admission sought is not substantially important, (3) the party failing to admit reasonably believed it might prevail on the matter, or (4) the party had another good reason for failing to admit the truth of the matter. *Id.*

 Zurich argues that it properly refused to admit that Canadian Pacific could enter into reasonable settlement of claims without authorization or consent of Zurich, without compromising any right of indemnification from Zurich, because the admission was poorly drafted and was of little overall importance. We conclude that this argument is without merit. The trial court found that the request for admission was clear and "went to the very heart of [Zurich's] declaratory judgment suit." The trial court also found that none of the exceptions in Minn. R. Civ. P. 37.03 applied to Zurich. These findings are supported by the record, which includes extensive argument related to the issue of Zurich's control of the settlement and shows that Zurich did not object to the form of the admission. Zurich ultimately conceded that its insurance contracts did not contain a requirement that Canadian Pacific seek permission to settle claims. The trial court did not abuse its discretion in sanctioning Zurich.

The trial court determined that Canadian Pacific incurred fees and expenses as a result of the failure to admit because the issue was central to the case and extensively briefed. The trial court also acknowledged that

> it would be virtually impossible to parse [Canadian Pacific's] counsel's billings to arrive at any reliable measure of the fees and expenses attributable to [Zurich's] failure to admit.

The trial court, therefore, awarded $25,000, which represented approximately 10% of the total billing by Canadian Pacific's counsel between mid-March and mid-November 1998. Given the complexity involved in computing the exact amount of fees and expenses attributable to Zurich's failure to admit, the trial court acted within its discretion in reaching the figure of $25,000.

Because we affirm the summary judgment against Zurich, we need not reach the apportionment issue or Canadian Pacific's arguments against summary judgment on its counterclaims.

### DECISION

Because Zurich is not afforded Miller–Shugart settlement protections and it did not raise a genuine issue of material fact concerning the inclusion of punitive damages in the settlement, the trial court did not err in granting summary judgment against it. The trial court did not abuse its discretion in sanctioning Zurich by imposing attorney fees or in setting the amount of the fee award.

**Affirmed.**