**GULF INSURANCE COMPANY,**
**a Minnesota corporation,**
**Plaintiff,**

**v.**

**SKYLINE DISPLAYS, INC., a Minnesota corporation and Gordon Savoie, a Minnesota resident, Defendants.**

**Skyline Displays, Inc., Plaintiff,**

**v.**

**Gulf Insurance Company, Defendant.**

Nos. Civ.02–3503 (DSD/SRN), Civ. 02–3632 (DSD/SRN).

United States District Court, D. Minnesota.

March 22, 2005.

Gary L. Lockwood, John S. Lindemann, J. Scott Humphrey, and Lord, Bissell & Brook, Chicago, IL and Thomas P. Kane, and Hinshaw & Culbertson, Minneapolis, MN, for Gulf Insurance Company.

Gary J. Haugen, Laurie A. Kindel, André J. LaMere, and Maslon, Edelman, Borman & Brand, Minneapolis, MN, for Skyline Displays, Inc. and Gordon Savoie.

## ORDER

DOTY, District Judge.

This matter is before the court upon, inter alia, the parties' cross-motions for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants each motion in part and denies each in part.

## BACKGROUND

The litigation arises from a dispute over the scope of coverage afforded by a directors' and officers' ("D & O") liability insurance policy. Skyline Displays, Inc., ("Skyline") is engaged in the business of designing and manufacturing trade show exhibits. Gordon Savoie founded Skyline in 1980 served as chairman of the board from that time until May 2004. Savoie is also Skyline's majority shareholder. In 1983, Bryan Beaulieu became associated with Skyline as an independent contractor. Beaulieu became a director in 1987 and went on to become Skyline's president, which capacity he held from January 1990 until June 1999. Beaulieu's wife, Yvette, also became affiliated with Skyline in 1983. In 1999, she became Skyline's vice-presi-

dent of sales. The Beaulieus and their children came to own a significant number of Skyline shares through their association with the company.

A dispute arose between Savoie and the Beaulieus when, on May 7, 1999, a group of Skyline's distributors sent Savoie a letter expressing their lack of confidence in Bryan Beaulieu's leadership as president. Five days later, the board of directors met to discuss the distributors' concerns. At the meeting, Savoie encouraged Beaulieu to abandon his management role to focus on manufacturing and product development. Beaulieu refused and informed the board that, if forced to relinquish any of his duties, he would immediately leave Skyline and set up a competing business. The members of the board resigned in the days following the meeting, leaving only Beaulieu and Savoie as directors.

Matters came to a head on June 2. On that day, Savoie met with Beaulieu and presented him with a memorandum. The memo discussed Beaulieu's behavior, observed that Savoie and Beaulieu, "as Skyline's sole directors, [were] plainly deadlocked" and announced that Savoie, "as majority owner of Skyline," would be relieving Beaulieu of his management responsibilities and making other changes. The memo stated that Beaulieu could retain his title of president and position on the board of directors and promised that his compensation and benefits would remain unchanged for at least two years. Yvette Beaulieu responded to the memo by commandeering Skyline's public address system and announcing that she and Mr. Beaulieu had been fired. The pair then promptly left the premises.

On July 9, 1999, the Beaulieus commenced an action against Savoie in Hennepin County, Minnesota, District Court (the "*Beaulieu* action") and later joined Skyline as a defendant. As amended, the complaint set forth four counts. The first count alleged that Skyline wrongfully terminated them. The second count alleged that Savoie breached a fiduciary duty he owed to the Beaulieus "[a]s Chairman of the Board and majority shareholder of Skyline." The third count called for the appointment of a receiver and additional director for Skyline. The fourth count asked the court to order a buy-out of the Beaulieus' shares pursuant to Minnesota Statute section 302A.751.

At the time the Beaulieus commenced their action, Gulf covered Skyline under a "Directors and Officers Liability and Company Indemnification Insurance Policy." The policy covered, among other things, "Loss . . . incurred by the Directors and Officers as the result of any Claim first made against the Directors and Officers and reported in writing to the Insurer during the Policy Period . . . for a Wrongful Act." (Policy at 1.) Skyline notified Gulf of the *Beaulieu* action on July 27, 1999, and provided it with the Beaulieus' amended complaint on January 31, 2000. On March 6, 2000, Gulf responded with a reservation of rights on several grounds, including the assertion that Savoie's acts performed in his capacity as Skyline's majority shareholder did not qualify as "Wrongful Act[s]" under the policy.

Talks to settle the *Beaulieu* action began shortly after Skyline and Savoie's motion for summary judgment was denied by the state court. The parties reached an accord in mid-February 2002. The true terms of the settlement are in dispute among the parties to this litigation. Nevertheless, the settlement was memorialized in two separate writings. The first writing, signed by Skyline and the Beaulieus, represents that "[i]n full, final and complete settlement of all claims made against Skyline by Bryan and Yvette in the Amended Complaint, Skyline shall pay eight million dollars ($8,000,000.00) to pur-

chase all of the approximately 625,408 shares of common stock of Skyline owned [by the Beaulieus and their children]." (Haglind Aff. Ex. N ¶ 1.1.) The writing also declares that Bryan Beaulieu will resign from the board of directors and that both Beaulieus will enter into a non-competition agreement. (*Id.* Ex. N ¶¶ 1.2 & 1.3.) The second writing, signed by Savoie and the Beaulieus, provides that "[i]n full, final and complete settlement of the claims for wrongful termination and other wrongful employment practices asserted against Savoie in the Amended Complaint," Savoie will make cash payments to the Beaulieus totaling approximately $1.4 million.

Skyline and Savoie sought Gulf's consent prior to consummating the settlement. Gulf replied that it would "not raise the consent requirement of the Gulf Policy as a defense to a settlement. . . ." However, when Skyline and Savoie later sought indemnity from Gulf for defense costs and monies paid in the settlement, Gulf denied the claim. On August 14, 2002, Skyline commenced an action against Gulf in Dakota County, Minnesota, District Court alleging breach of contract and seeking damages and declaratory relief. On August 27, 2002, Gulf commenced a similar action for declaratory judgment in this court. Gulf thereafter filed a timely notice of removal with respect to the Dakota County matter, and the two cases have been consolidated in this court. All parties now move for summary judgment.

## DISCUSSION

### I. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(c)). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *See id.* at 252, 106 S.Ct. 2505.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the non-moving party. *See id.* at 255, 106 S.Ct. 2505. The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. 2548. Judgment may be rendered with respect to all or any part of a particular claim. *See* Fed.R.Civ.P. 56(b).

### II. Duty to Indemnify

■ The issue presented for the court's summary determination is whether Gulf owed Skyline and Savoie a duty of indemnity with regard to the claims stated in counts one and two of the *Beaulieu* amended complaint. This coverage issue, including the proper interpretation of the policy, is a question of law. *Foster v. Summit Med. Sys., Inc.,* 610 N.W.2d 350,

353 (Minn.Ct.App.2000) (quoting *Jenoff, Inc. v. N.H. Ins. Co.*, 558 N.W.2d 260, 262 (Minn.1997)). In the circumstances of this case, the court asks whether the settlement included claims for risks Gulf agreed to assume. *See St. Paul Fire & Marine Ins. Co. v. Nat'l Chiropractic Mut. Ins. Co.*, 496 N.W.2d 411, 415 (Minn.Ct.App. 1993). The court considers "the circumstances and events resulting in the settlement to determine which claims were actually settled."[1] *Zurich Reinsurance (UK) Ltd. v. Canadian Pacific Ltd.*, 613 N.W.2d 760, 764 (Minn.Ct.App.2000) (citing *Nat'l Chiropractic*, 496 N.W.2d at 415). The *Beaulieu* settlement was reached following the denial of Skyline and Savoie's motion for summary judgment. Therefore, the memorandum order of the state trial court is instructive as to what claims, if not compromised, would have been submitted for the jury's determination. *See Nat'l Chiropractic*, 496 N.W.2d at 416.

### A. What Claims Were Covered

◼ Having thus framed its analysis, the court determines that the Gulf policy afforded coverage to Skyline for the Beaulieus' wrongful termination claim as pleaded in count one of the amended complaint. In count one, the Beaulieus alleged that "Skyline's termination of [them] was without justification" and that they had suffered damages "[a]s a result of Skyline's

wrongful conduct." (Am. Compl. at ¶¶ 34–35.) The claim is covered under insuring clause C of the Gulf policy, which provides that Gulf "will pay on behalf of [Skyline] Loss ... which Loss is incurred by [Skyline] as the result of any Claim ... made against [Skyline] ... for a Wrongful Act." (Endorsement 0006 at 2.) Moreover, although claims brought against Skyline by its officers or shareholders are generally excluded from the policy, coverage is specifically preserved for employment claims such as the Beaulieus'. (Endorsement 0006 at 5.)

◼ The court rejects the argument that count one states a covered claim against Savoie. In Minnesota, a wrongful termination claim will not lie against a corporate officer unless he has acted outside the scope of his employment. *See Piper Jaffray Cos., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 967 F.Supp. 1148, 1158 (D.Minn.1997) (discussing *Nordling v. N. States Power Co.*, 478 N.W.2d 498 (Minn.1991)). Count one makes no allegation of ultra vires conduct by Savoie. Rather it speaks only of "Skyline's termination" and "Skyline's wrongful conduct." Furthermore, the state court's summary judgment order contains no indication that the court interpreted the wrongful termination claim to run against Savoie. Therefore, Skyline owes no duty

---

**1.** This principle of Minnesota law precludes Gulf's attempt to bar extrinsic evidence regarding the *Beaulieu* settlement under the parol evidence rule. (*See* Gulf Ins. Co.'s Mot. Strike.) Even were it not so, Gulf has failed to cite any case in which an insurer has been permitted to use the parol evidence rule to prevent introduction of evidence regarding the terms of a settlement to which it was not a party and, indeed, in which it refused to take part. Therefore, Gulf's motion to strike is denied.

With the merits of the motion to strike decided, there remains Skyline and Savoie's motion to strike Gulf's reply brief in support

of the motion to strike. The court is loath to grant the motion because Skyline and Savoie have failed to articulate any prejudice they suffered because of Gulf's transgression. In the absence of prejudice, motions for sanctions are usually a waste of the court's time. More disturbing in this case, however, is the apparent fact that Gulf filed its reply brief after once being reminded by the magistrate judge that such submissions are not permitted. The court's local rules and, more important, the orders of its magistrate judges are not to be ignored. Therefore, the motion to strike is granted.

of indemnity to Savoie with regard to the Beaulieus' wrongful termination claim.

■ The court also rejects Savoie's contention that the Gulf policy covers him for the Beaulieus' breach of fiduciary duty claim. The Gulf policy extends coverage only for claims based on "Wrongful Acts," meaning, among other things, acts and breaches of duty "committed or attempted, by one or more Directors or Officers ... in their respective capacities as such."[2] (Endorsement 0006 at 3.) The policy contains no indication that Gulf agreed to assume the risks associated with claims based on acts of shareholders or breach of the duties peculiar to shareholders in a closely-held corporation. Accordingly, unless the Beaulieus' breach of fiduciary duty claim is based at least in part on a duty owed or action taken by Savoie as a director or officer, there is no coverage under the policy.

The Beaulieus alleged in the amended complaint that Savoie owed them fiduciary duties both "[a]s Chairman of the Board and majority shareholder." (Am. Compl. ¶ 37.) The state court, however, interpreted the gravamen of the claim as Savoie's frustration of the Beaulieus' expectations of continued employment and participation in the management of Skyline. A shareholder in a closely-held corporation owes a duty to other shareholders not to interfere in the others' " 'reasonable expectations of ... a job, salary, a significant place in management, and economic security for [their families].' " *Pedro v. Pedro*, 489 N.W.2d 798, 802 (Minn.Ct.App. 1992) (quoting Joseph E. Olson, *A Statutory Elixir for the Oppression Malady*, 36

Mercer L.Rev. 627, 629 (1985)). This duty does not arise from a person's position as an officer or director, but rather from the partner-like relationship among shareholders of a closely-held corporation. *Id.* at 801. Therefore, the Beaulieus' breach of fiduciary duty claim does not implicate duties owed by Savoie in his capacity as chairman of the board.

Nor does the claim address actions taken by Savoie in his chairman capacity. Contrary to his assertions, Savoie had no power as chairman under Skyline's bylaws to remove an officer by fiat.[3] Nor would the bylaws tolerate Savoie's unilateral, wholesale removal of Bryan Beaulieu's management responsibilities.[4] Instead, given the deadlock on the board, the only authority for Savoie's peremptory action sprang from his status as majority shareholder. Savoie accurately recognized this circumstance when, before having an opportunity to reflect on the niceties of the Gulf policy, he himself claimed to be taking action "as majority owner of Skyline." (2d Love Aff. Ex. 9 Ex. C at 1.) Therefore the court determines that, because the Beaulieus' breach of fiduciary duty claim was not based on Savoie's actions or duties as a director or officer, no coverage exists.

### B. What Claims Were Settled

■ Having found that the *Beaulieu* action included one covered claim, the court must ask (1) whether that claim was included in the settlement and (2) whether settlement of the claim resulted in a loss to Skyline. The written settlement agreement between Skyline and the Beaulieus

---

2. This coverage limitation applies equally under insuring clause A, with Savoie as insured, and insuring clause B, with Skyline as insured indemnitor.

3. "The officers shall hold office until their successors are elected and qualify; provided, however, that any officer may be removed with or without cause *by the affirmative vote of a majority of the directors present at a Board of Directors meeting.*" (Savoie Aff. Ex. A at 8. (emphasis added))

4. "The President shall ... [h]ave general active management of the business of the Corporation." (Savoie Aff. Ex. A at 8.)

provides that, "[i]n full, final and complete settlement of all claims made against Skyline by Bryan and Yvette in the Amended Complaint, Skyline shall pay eight million dollars ($8,000,000.00) to purchase all of the approximately 625,408 shares of common stock of Skyline owned [by the Beaulieus and their children]." (Haglind Aff. Ex. N ¶ 1.1.) The court finds that this broad phrase establishes that the Beaulieu/Skyline settlement encompassed every claim asserted against Skyline in the amended complaint, including the covered claim contained in count one.

■ Finally, the court considers whether the settlement resulted in a covered loss to Skyline. Gulf argues that the language of the Beaulieu/Skyline settlement agreement is conclusive evidence that Skyline settled the claims against it in a zero-sum transaction, simultaneously disbursing $8 million in cash and receiving $8 million worth of stock. Therefore, Gulf concludes, Skyline suffered no loss from its settlement of the covered claim. Skyline, on the other hand, argues that the written agreement does not reflect the true terms of its bargain with the Beaulieus. Skyline asserts that there were really two deals, one to repurchase the Beaulieus' stock for $6.67 million and another to settle the Beaulieus' employment-based claims against both Skyline and Savoie for $2.7 million. The parties then massaged the numbers to alleviate the Beaulieus' tax concerns, minimizing exposure to ordinary income tax rates and maximizing exposure to capital gains tax rates. According to Skyline, it was this tax-related shuffling that resulted in the Beaulieu/Savoie agreement for $1.4 million and the Beaulieu/Skyline agreement for $8 million.

In light of this dispute, the court finds that genuine issues of material fact preclude summary judgment as to the amount of Skyline's loss, if any.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. Gulf Insurance Company's motion for summary judgment [Doc. No. 75, 66] is granted in part and denied in part.

2. Skyline Displays, Inc., and Gordon Savoie's motion for summary judgment [Doc. No. 80, 71] is granted in part and denied in part.

3. Gulf Insurance Company's motion to strike the affidavit and testimony of Kenneth Haglind [Doc. No. 89, 80] is denied.

4. Skyline Displays, Inc., and Gordon Savoie's motion to strike Gulf's reply brief in support of its motion to strike [Doc. No. 121, 112] is granted.